[Civ. No. 21799. First Dist., Div. Three. July 20, 1965.]

WILLIAM J. RADUNICH, JR., Plaintiff and Respondent, v. RICHARD BASSO et al., Defendants and Appellants.

Timothy A. O'Connor, David R. Sylva and Thomas P. Breen for Defendants and Appellants.

Marlais & Hover and John P. Marlais for Plaintiff and Respondent.

BRAY, J.*—Defendants Richard Basso, Lona Basso, A. J. Basso, Josephine Basso and Surety Title & Guaranty Company appeal from the judgment without jury trial in favor of plaintiff, hereinafter described.

## Questions Presented

1. Is defendant Surety Title & Guaranty Company a proper party to this appeal?[1]

2. Alleged failure to find on meaning of subordination clause.

3. Are the findings supported by the evidence?

4. Was judgment determining plaintiff's deed of trust to be a first lien erroneous as a matter of law?

5. The 1-acre tract omission from plaintiff's deed of trust.

## Record

This action arises from a sale of plaintiff's property to Cavalier Homes Development Company, Inc. and the latter's issuance of two deeds of trust to secure payment of the sale price. Involved is the proper priority of those deeds of trust.

The action was brought against Cavalier Homes Development Company, Inc., R. Donohue, R. W. Moles, in addition to Surety and the above named Bassos. The gravamen of the complaint[2] is a charge of fraud resulting in the purchase price deed of trust from Cavalier to plaintiff being made a lien subsequent to a deed of trust from Cavalier to Donohue

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Hereinafter referred to as "Surety."

[2]The trial was had on the amended complaint, which will hereafter be referred to as "the complaint."

which was assigned to Basso.[3] The complaint prayed for foreclosure of the deed of trust from Cavalier to plaintiff for $51,500 and that said deed of trust be adjudged a first lien on the property superior to the Basso deed of trust; for judgment against Surety and Moles for $41,500; and that the deed of trust to plaintiff be reformed by striking therefrom the provision excepting a certain acre of land.

The court found that Cavalier, Donohue,[4] Moles and Surety undertook a scheme to defraud plaintiff by making the Basso deed of trust superior to plaintiff's deed of trust and misrepresenting the true nature of the transaction. The court then gave judgment against Cavalier for $51,500 plus interest and attorneys' fees of $3,500, and for judicial foreclosure of plaintiff's deed of trust and providing that the lien of the Basso deed of trust was inferior to that of plaintiff, and that plaintiff take nothing against Surety and Moles.

As only Basso and Surety are appealing, the basic question (other than that of Surety's right to appeal) is whether the court properly found that the Basso deed of trust which was issued as a first lien on the property and so insured by Surety, is in fact inferior to plaintiff's deed of trust.

### 1. *Surety Not Entitled to Appeal*

Although the court found that Surety and Moles, its corporate and escrow officer, participated in the fraud against plaintiff, the court refused to give judgment against either, apparently on the theory that as the court was foreclosing plaintiff's deed of trust as a first lien on the property, plaintiff was not damaged by their fraud.

█ In order to have the right to appeal a party must be aggrieved by the judgment from which the appeal is taken. (Code Civ. Proc., § 938.) Plaintiff contends that as the judgment was in favor of Moles and Surety, they were not aggrieved by it. █ Surety contends that it is aggrieved by the court's determination that the Basso deed of trust is inferior in lien to plaintiff's deed of trust because Surety issued to Basso a policy of title insurance insuring the Basso deed of trust as a first lien, and if the judgment becomes final Surety will be obligated to pay to Basso under its policy

---

[3]Hereinafter referred to as the ''Basso deed of trust.''

[4]Although Donohue was made a defendant in the action, no relief against him was asked in the complaint and he is not mentioned in the judgment.

any damage Basso may have suffered up to $35,000. Plaintiff's complaint sought damages from Surety for the alleged fraud. Defendant Surety's answer denied the allegations of fraud in plaintiff's complaint and prayed that plaintiff take nothing by his complaint. This prayer was granted. It is true that the answer also asked that the Basso deed of trust be decreed a lien superior to that of plaintiff's, but nowhere in the pleadings is there any allegation of any interest of Surety in the Basso deed of trust or in the property. The mere fact that the title insurance policy insuring Basso was introduced in evidence by plaintiff does not give Surety any direct interest in this action. Moreover, whether Surety will ever have to pay Basso damages is contingent upon future happenings. Surety, which obtained a judgment against plaintiff, is not aggrieved by that judgment and hence has no right to appeal.

2. *Finding on Subordination Clause*

▇ Defendants contend that the court failed to find on "the nature and scope" of the subordination clause. Such a finding would not be a finding of fact but a conclusion of law. ▇ On the fact side, the court found that defendant Moles, when he presented the deed to plaintiff for execution, "did represent and state to PLAINTIFF that the deed of trust from Defendant CAVALIER to PLAINTIFF, securing the promissory note for the balance of the purchase price, could not be made a second lien deed of trust for any purpose other than to a loan for improvements and/or construction on the property when the said property was subdivided by the purchasers." The court further found that said representations were false and made with the intent of defrauding plaintiff of the security of a *first* deed of trust for the balance of the purchase price and that said representations were relied upon by plaintiff, and that no written or verbal authorization was given Moles by plaintiff to record the Basso deed of trust prior to plaintiff's deed of trust. These findings of fact, together with the conclusions of law to the effect that the deed of trust to plaintiff is a first lien on the property and that the Basso deed of trust is junior and subordinate to it, constitute a sufficient finding on the nature and scope of the subordination clause in the agreement of sale and which was inserted in the plaintiff's deed of trust. See *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593], holding, "It is also to be noted that while full findings

are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made. [Citation.]''; and *Spaziani* v. *Millar* (1963) 215 Cal.App.2d 667, 678-679 [30 Cal.Rptr. 658], ''The finding on the ultimate fact in the fraud issues herein, impliedly constitutes a finding of the nonexistence of a confidential or fiduciary relationship between the parties if such a finding is essential to support the judgment. [Citations.]''[5]

### 3. *Findings Are Supported*

We here apply the long established rule that where the evidence is conflicting, the findings of the trial court must be sustained if based upon substantial evidence. (*Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183].) Some of the evidence supporting the judgment was this:

Plaintiff was the owner, subject to a life tenancy in his father, of a 9-acre parcel of land with a house in Santa Clara. A neighbor, Alaric Gashler, advertised the property for sale. Roy Donohue, president of Cavalier Homes Development Company, answered the ad. Donohue first presented to Gashler a real estate deposit receipt signed by Donohue personally as buyer. This was not satisfactory to plaintiff and his father. Later, one satisfactory to them was presented which gave ''R. Donohue or nominee'' as purchaser. The purchase price was $71,500. It contained the following provision inserted by Donohue: ''Total purchase price of $71,500.00 *subordinate to land and improvement loan or loans*. $20,000.00 paid to Seller at close of escrow representing total down payment. . . . Trust deed shall provide for partial reconveyance at the rate of $6,125.00 per acre or fraction thereof, one acre shall be reconveyed for down payment paid.'' (Italics added.)

Surety and its escrow officer, defendant Moles, handled the escrow. The escrow instructions were prepared by Moles after discussion with Donohue, Percy, secretary of Cavalier, and

[5]Interestingly enough, under defendants' theory that the clause was intended to include a deed of trust for the purchase price, plaintiff's purchase price deed of trust would be left in a precarious situation. It would be subordinate first to a deed of trust for the down payment and to a deed of trust for moneys to be used in improvement of the land and for construction thereon. So plaintiff's third lien would not have been worth much.

one Sany Novak. Plaintiff did not participate. The escrow file of the transaction was lost and no records of the escrow could be produced at the trial. Plaintiff denied ever signing or receiving any escrow instructions.

Three startling features appear in the escrow instructions:

*First,* the sale was to be a double sale; Donohue would buy the property from plaintiff for $71,500 and then would resell the property to Cavalier for $80,912. However, the resale to Cavalier was to be considered a "paper sale," requiring no grant deed. This double sale was not reported to plaintiff. The accounting statement to plaintiff showed the sale of the property from plaintiff to Cavalier at a sale price of $71,500 with a down payment of $20,000 and a note and deed of trust from Cavalier to plaintiff in the amount of $51,500. The separate accounting statement to Donohue showed a sale from Donohue to Cavalier at a sale price of $80,912 and notes and deeds of trust from Cavalier to plaintiff and Donohue totaling $80,912. A copy of this statement was *not* sent to plaintiff. Neither Donohue nor Moles informed plaintiff that the sale would be to Donohue and that Donohue would convey the property to Cavalier.

*Second,* it was decided that the property would be acquired through use of multiple deeds of trust. Donohue would borrow from Novak sufficient money with which to make the down payment of $20,000 to plaintiff, giving Novak a deed of trust as security. Donohue would sell the property to Cavalier, Cavalier would issue two notes and deeds of trust, the first note and deed of trust would be to Donohue. This would be assigned to Novak, and would be considered the first deed of trust and would be a first lien on plaintiff's property. Cavalier would then issue a second note and deed of trust to plaintiff, which would be considered subordinated to the first deed to Donohue. Novak did not complete the loan. Basso was found by another broker, and after inspection of the property, made the loan and received an assignment of the deed of trust from Cavalier to Donohue. This deed of trust was for $29,412, with interest at 10 per cent per annum.

Plaintiff did not know of the need to raise funds for the down payment and the plan to use multiple deeds of trust.

*Third,* 1 acre, that with the house on it, was excluded from the deed of trust from Cavalier to plaintiff. The court found that this exception was inserted without the knowledge of

plaintiff. This, in effect, meant that Radunich was conveying to Cavalier the 1 acre of property for the down payment. After the completion of the escrow, Cavalier borrowed $14,000 on the 1 acre and funds were paid out to Donohue and Percy. Title to the property was conveyed to James Donohue, defendant Donohue's father, for a sale price of $18,000. No funds were paid by James Donohue, the purchase price being paid by cancellation of indebtedness owed by defendant Donohue to James Donohue and by assumption of the deeds of trust executed by Cavalier. The court found that the conveyance was without consideration.

Neither the installment payment of $5,150 nor the interest payment was made by Cavalier to Radunich on the due date of July 8, 1961, and notice of default was filed by Radunich on July 21, 1961.

Defendants contend that there is no evidence to support the court's finding that the execution and recording of the Cavalier-Donohue-Basso deed of trust prior to the plaintiff's deed of trust was without the consent of plaintiff, or that Basso was negligent in investigating the manner in which Cavalier was acquiring the property and thus that Basso does not have a prior lien in the property.

Defendants' main contention concerning the subordination of plaintiff's deed of trust to that of Basso is that the provision in the agreement signed by Radunich, "Total purchase price of $71,500.00 *subordinate to land and improvement loan or loans*" (italics added), meant and was understood by the parties to mean that the trust deed to be given plaintiff for the balance of the purchase price would be subordinate to a deed of trust to be used to obtain money to make the $20,000 down payment to plaintiff. The court treated the question of the interpretation of this provision as one of fact, for it admitted substantial evidence as to what plaintiff understood this provision to mean, what Cavalier, Donohue and Moles understood it to mean, and why Donohue and Moles had not informed plaintiff as to their alleged belief that it authorized a first deed of trust for acquisition of down purchase funds.

Where the instrument is ambiguous and the trial court properly treats its interpretation as a question of fact, and the evidence concerning its correct interpretation is in conflict, the trial court's finding will be supported if based upon substantial evidence. (See *Parsons* v. *Bristol Develop-*

*ment Co.*, 62 Cal.2d 861, 864-866 [44 Cal.Rptr. 767, 402 P.2d 839]; 4 Cal.Jur.2d, Appeal and Error, § 604, p. 480.)

 Plaintiff testified that he understood the subordination provision meant that his purchase money deed of trust could be subordinated only to construction improvement and land loans. However, he also testified that there was never any discussion or explanation to him that money would be borrowed to acquire the property to be secured by a deed of trust to which his would be subordinate. It was not his understanding that such a thing could be done or was intended to be done. He never signed any escrow instructions authorizing execution or prior recordation of a first deed of trust from Cavalier to Donohue, nor was he told by the escrow officer, Moles, that his deed of trust would be subordinated to the Basso deed of trust. In addition, the real estate broker, Gashler, testified that there was no discussion between him and Donohue or Percy that Donohue intended to use the property to borrow funds to make the down payment. There was only a discussion of improvement and construction loans. He told plaintiff of the proposed use of the subordination provision to obtain improvement and construction loans only.

There is a great deal of difference between a loan to obtain money to be used to improve the land or for construction thereon, which improvement or construction would enhance the value of plaintiff's security, and a loan for money to pay the purchase down payment. The evidence fully supports the finding that the subordination provision did not mean and was not intended to mean that it should apply to security for a loan to obtain purchase money.

 The evidence also supports the finding that Basso was not a bona fide purchaser without notice. Apparently, the deed of trust from Cavalier to Donohue was executed July 26 and assigned to Basso on August 1. It was recorded on August 4. Moles prepared plaintiff's deed of trust on July 26. Moles requested plaintiff to come to his office to sign it. Plaintiff went there on August 1 but was unable to find Moles. On August 4 an associate of Moles brought the deed of trust to plaintiff's house, where he signed it that day.

On August 4, at 10:59 a.m., the grant deed from plaintiff and his father to Cavalier was recorded in the Santa Clara County Recorder's Office. At 11 a.m., the deed of trust from Cavalier to Donohue was recorded. At 11:01 a.m., the assignment of that deed of trust to Basso was recorded and at the

same moment, 11:01 a.m., the deed of trust from Cavalier to plaintiff was recorded.

Defendants contend that because the Basso deed of trust was executed prior to the execution of plaintiff's deed of trust and recorded prior to the recordation of the latter, Basso was a bona fide purchaser for value without notice. Basso's contention that the subordination clause in plaintiff's deed of trust protects him is unfounded. That clause shows that it only applied to loans for land improvement or for construction. Basso knew that the loan he was making was to be used for the down payment on the property and not for improvements. This fact put him on notice and required him to investigate to determine if plaintiff agreed that the deed of trust Basso was buying should be a first lien. Basso made no investigation. As the court held, he was careless and negligent in failing to make such investigation. Basso cannot claim the benefit of the recording statute, for at the time that he placed his money in escrow there was nothing of record concerning the transaction, and title to the property was still in plaintiff. Basso, when he placed his money in escrow, did not even inquire of the escrow holder if there were any instructions from plaintiff as to priority of recording. Basso then was under a duty to contact plaintiff, who he knew was the owner of the property, to determine what the true situation was. Actually, Basso did not know that he was to receive an assigned deed of trust rather than a direct deed of trust to him. Applicable here is the following from *Chalmers* v. *Raras* (1962) 200 Cal.App.2d 682, 687 [19 Cal.Rptr. 531]: ''There is no validity in appellants' contention that the provision in their contract was not sufficient to put them on notice of respondents Chalmers' rights. . . . In our opinion, appellants had sufficient facts to compel further inquiry and cannot now claim to be bona fide purchasers merely because they chose to make no investigation as to the 'other parties.' ''

### 4. *Judgment Not Erroneous as a Matter of Law*

Defendants contend that the court had no power to reverse the priorities of the deeds of trust, that, having found that plaintiff was defrauded by Cavalier, Moles and Surety, plaintiff was relegated to recovering damages as prescribed in section 3343 of the Civil Code (out-of-pocket loss). While that section does provide a measure of damages in a fraud case involving real property, it does not preclude other reme-

dies. The section expressly states: "Nothing herein contained shall be deemed to deny to any person having a cause of action for fraud or deceit any legal or equitable remedies to which such person may be entitled."

█ It is proper that the court determined lien priorities instead of granting damages. By so doing, plaintiff is restored to what he expected under the agreement, and is not damaged. The court lets him retain the down payment of $20,000 as agreed, and lets him foreclose for nonpayment the purchase price deed of trust, as a first lien, as was agreed. Thus, plaintiff receives full value for his property. This was the fair and equitable way to determine this case. █ The court has the power to determine priorities between deeds of trust or mortgages. (See *Prouty* v. *Devin* (1897) 118 Cal. 258 [50 P. 380], an action brought to determine priorities between mortgages.)

5. *The One-Acre Tract*

█ As hereinbefore shown, plaintiff's deed of trust omitted the 1 acre upon which the house was located. The court found that this omission was without plaintiff's knowledge or consent. Defendants contend that this finding is erroneous because the deposit receipt states that "one acre shall be reconveyed for down payment" and the only acre worth the $20,000 down payment was the one with the house on it. As the court refused to reform plaintiff's deed of trust to include this acre and to render judgment against Moles and Surety for damages, the error, if any, in this finding is immaterial.

Judgment affirmed.

Salsman, Acting P. J.,and Devine, J., concurred.