[Civ. No. 652.   Fifth Dist.   Sept. 7, 1966.]

MEL RICE et al., Plaintiffs and Respondents, v. CAPITOL TRAILER SALES OF REDDING, Defendant and Appellant.

*Assigned by the Chairman of the Judicial Council.

Mento, Buchler & Littlefield, George K. Littlefield, O. J. Ramsey and Theodore H. Morrison for Defendant and Appellant.

Wilke, Fleury, Sapunor & Hoffelt and Sherman C. Wilke for Plaintiffs and Respondents.

STONE, J.—Defendant appeals from a judgment quieting title to a limited easement for ingress and egress, and awarding compensatory damages for wrongful interference with the easement.

Plaintiffs, husband and wife, owned two lots at the southwest corner of West Capitol Avenue and Sycamore Street in West Sacramento. In March 1961 they constructed a service station on the corner lot. Because the lot was not wide enough to permit free access for motor vehicles from West Capitol Avenue, plaintiffs constructed a triangular driveway or

entrance to the service station over a corner of the adjoining lot. The base of the right-angled triangle bordered West Capitol Avenue and was 55 feet wide; the side extended 80 feet along the boundary between the two lots. The street side was improved with a gutter and sidewalk; the rest of the driveway was blacktopped. Approximately 90 percent of plaintiffs' business is with vehicles entering the service station from West Capitol Avenue.

To construct the service station, plaintiffs obtained a $40,000 loan from Crocker-Anglo National Bank that was evidenced by a promissory note secured by a deed of trust to the corner lot. The bank required that the deed of trust also include the driveway over the adjoining lot facing West Capitol Avenue.

In 1962, through its president, John A. Dussault, defendant negotiated with plaintiffs for the purchase of the lot adjoining the service station property. Dussault examined the property several times before deciding to buy. He was well aware that plaintiffs were operating a service station business on the corner lot and using a driveway over a portion of the northeast corner of the parcel which he proposed to purchase. The parties agreed upon a sale price, and an escrow was opened with Woodland Title Guarantee Company. A preliminary title report issued by that company to defendant October 29, 1962, reflected the following exception: "4. Right of way and easement for access purposes over a portion of the above described property. Said right of way is evidenced by and is subject to that certain deed of trust in the amount of $40,000.00, executed by Mel Rice and Fern Rice, his wife, Trustors to The Anglo Safe Deposit Company, a California corporation, Trustee and Crocker-Anglo National Bank, a corporation, Beneficiary, dated February 7, 1961 and recorded February 7, 1961 in Book 627 of Official Records at Page 64.''

Thereafter, on November 8, 1962, at the title company offices, plaintiffs executed an escrow agreement which had been prepared by defendant's counsel, the pertinent provisions of which are set forth below. On November 21, 1962, plaintiffs conveyed to defendant the lot adjoining their service station, but the deed made no mention of the easement for ingress and egress. Defendant, contending the deed extinguished plaintiffs' easement, built a fence along the lot line to prevent use of the driveway. The trial court held that plaintiffs had a limited easement for the life of the deed of trust.

In arguing for a reversal, defendant raises a number of interesting and technical questions concerning the law of real property, particularly in the area of implied reservations. Yet most of defendant's arguments presuppose a conveyance to an innocent purchaser, a status which it cannot claim.

To begin with, the bank required, as a prerequisite to its loan to plaintiffs on the service station property, that the obvious easement be included in the property subject to the deed of trust securing the loan. Defendant's president, Dussault, who negotiated the purchase on behalf of defendant, learned of the easement when he inspected the property as a prospective purchaser. Not only was he aware of the easement from visual inspection but from the preliminary title report he obtained October 29, 1962. Having this information, Dussault executed an escrow agreement prepared by defendant's attorney, which was also signed by plaintiffs who were not represented by counsel. It provided, in part: ''Sellers have agreed to convey to Buyer certain real property located in the City of West Sacramento, County of Yolo, State of California. Said property is specifically described in a Grant Deed delivered by Sellers into escrow in the Woodland Title Guaranty Company.

''  .   .   .   .   .   .   .   .   .   .   .   .

''Sellers obtained a loan from the Crocker-Anglo Bank. Said loan is secured by a Deed of Trust encumbering property owned by Sellers which is adjacent to the property being sold to Buyer. Said Deed of Trust also is an encumbrance on a portion of the northeast corner of the real property being purchased by Buyer.

''In consideration of the transfer of said real property in West Sacramento, County of Yolo, State of California, from Sellers to Buyer and Buyer paying Sellers for said transfer, it is hereby agreed as follows:

''1.   .   .   .   .   .   .   .   .   .   .   .

''2. Sellers hereby agree to remove the Deed of Trust from that certain portion of the northeast corner of the property being conveyed by making timely payments on that certain note wherein Crocker-Anglo Bank is the payee. Sellers further agree that upon payment in full of said note that they will instruct the Trustee of the certain Deed of Trust to convey title to buyer.

''It is further agreed by Sellers that, upon conveyance of said real property herein mentioned to Buyer, they shall have no right, title or interest in any portion of said real property

of whatsoever nature, other than their interest as a beneficiary on a Deed of Trust encumbering said land as their security for the balance on the purchase price owed to them by Buyer, said indebtedness being evidenced by a Note, in the sum of Thirty Thousand Dollars ($30,000.00)."

Since defendant was not a bona fide purchaser and the deed was executed and delivered pursuant to the escrow agreement, we must determine the effect of the deed, as between the parties, in accordance with their intent expressed in the agreement.

It seems clear from that part of paragraph 2 whereby plaintiffs agreed to remove the deed of trust by making timely payments on the note, and upon full payment thereof to instruct the trustee to convey title to the easement to defendant, that the parties did not intend that the deed should strip plaintiffs of the right to use the easement until the note was paid. Obviously the bank had the easement included in the deed of trust for its protection, protection not only in the case of foreclosure, as defendant argues, but also to facilitate repayment of the loan and prevent foreclosure, as banks are in the business of lending money, not acquiring property by foreclosure. Plaintiffs' position as debtors of the bank is somewhat comparable to third party beneficiaries in that they enjoy use of the easement under the deed of trust until the bank is repaid and the deed of trust is extinguished by a deed of reconveyance.

On the other hand, defendant points to the last paragraph of the escrow agreement, providing that plaintiffs will have no interest in the property to be conveyed to defendant other than their interest as beneficiaries under the deed of trust securing the balance due them on the sale price of the lot.

Because of this conflict, the trial court deemed the easement aspect of the escrow agreement ambiguous or uncertain and admitted parol evidence as an aid to the interpretation of the entire agreement. We conclude that by reason of this patent uncertainty on the face of the contract extrinsic evidence was properly admitted. (*Schmidt* v. *Macco Constr. Co.,* 119 Cal.App.2d 717, 731 [260 P.2d 230].)

An escrow officer of the title company who handled the escrow and who was charged with following the provisions of the escrow agreement, testified that after the preliminary report was issued Mr. Dussault, president of defendant corporation, and plaintiff Mel Rice discussed the easement at some length. He testified: "A. I don't remember the exact words,

obviously. But Mr. Rice said that it was his intention to use this easement or driveway area until such time as the Deed of Trusts were reconveyed on the service station property, which would, at that point eliminate the easement. *It was admitted, or said by Mr. Dussault during the course of these conversations that he understood that was the case and that he would not have the use of this easement or driveway area until such time as that Deed of Trust was reconveyed.* They also discussed the fact what could happen is that Mr. Rice might default on the payments to his lender, Crocker-Anglo Bank. If he defaulted on those payments, then the bank would foreclose on the property, and if they did, the bank would get title to that easement right then upon foreclosure, and they discussed a method of procedure whereby in the event Mr. Rice did default on those payments, then Mr. Dussault would be entitled to step in and make—instead of making his payments to Mr. Rice called for by his note, could skip Mr. Rice and pay the bank to prevent a foreclosure from taking that easement.'' (Italics added.)

Although there was contradictory extrinsic evidence, the testimony of the escrow officer was not effectively impeached. Any evidence to the contrary simply created a conflict to be weighed by the trial court. The escrow officer's testimony alone constitutes substantial evidence and as such is sufficient to support the trial court's interpretation of the agreement. (*Radunich* v. *Basso,* 235 Cal.App.2d 826, 833 [45 Cal.Rptr. 824].)

The trial court's resolution of the uncertainties in the agreement against defendant accords with Civil Code section 1654, which provides: ''In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . .'' Defendant's attorney prepared the agreement, and plaintiffs were without counsel.

By way of summary, defendant had notice of the terms of the easement delineated in the deed of trust to the bank, which was recorded long before defendant negotiated with plaintiffs for purchase of the lot. Plaintiffs had no authority to relinquish or release the easement from the deed of trust; only the bank had that power.

We believe the trial court correctly determined that by the escrow agreement defendant recognized the existence of the easement for the life of the deed of trust, an easement inuring

to the benefit of plaintiffs until extinguished by payment of the loan which the deed of trust secured.

The judgment is affirmed.

Conley, P. J., and McMurray, J. pro tem.,* concurred.

A petition for a rehearing was denied September 29, 1966, and appellant's petition for a hearing by the Supreme Court was denied November 2, 1966.

*Assigned by the Chairman of the Judicial Council.