[Civ. No. 26942. First Dist., Div. One. Aug. 12, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WEST COAST SHOWS, INC., Defendant and Appellant.

[Civ. No. 26943. First Dist., Div. One. Aug. 12, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
B-JAN AMUSEMENT CORPORATION, Defendant and Appellant.

(Consolidated Appeals.)

**COUNSEL**

Charles Bagby, Hersh & Hadfield and James D. Hadfield for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Wallace Howland, Assistant Attorney General, Robert E. Murphy, Michael I. Spiegel, Carole A. Kornblum and James R. McCall, Deputy Attorneys General, and Harold J. Tomin for Plaintiff and Respondent.

**OPINION**

**ELKINGTON, J.**—In 1967 the Attorney General as head of the State Department of Justice (Gov. Code, § 15000) and as permitted by Govern-

ment Code sections 11180[1] and 15006,[2] commenced an investigation of "Anti-competitive and/or fraudulent activities in the carnival industry in the State of California." (Hereafter all statutory citations will, unless specially noted, be to Government Code.)

Among the subjects of the investigation were appellants B-Jan Amusement Corporation and West Coast Shows, Incorporated. Pursuant to section 11181[3] the Attorney General caused to be served upon each of them a subpoena duces tecum directing production of certain designated documents, books, records, and papers. The service was effected by hand delivery to Robert H. Cohn who was president of both corporations. The corporations failed to appear at the designated time and place. This resulted in ex parte applications to the superior court under sections 11186,[4] 11187,[5] and 11188,[6] by which the corporations were ordered to show cause why

---

[1]Section 11180 provides: "The head of each department may make investigations and prosecute actions concerning:

"(a) All matters relating to the business activities and subjects under the jurisdiction of the department.

"(b) Violations of any law or rule or order of the department.

"(c) Such other matters as may be provided by law."

[2]Section 15006 provides: "The Department of Justice shall maintain a continuing investigation on a statewide basis of investment frauds and business crimes and shall assist district attorneys of the various counties in the prosecution thereof."

[3]Section 11181 provides: "In connection with these investigations and actions he may:

"(a) Inspect books and records.

"(b) Hear complaints.

"(c) Administer oaths.

"(d) Certify to all official acts.

"(e) Issue subpenas for the attendance of witnesses and the production of papers, books, accounts, documents and testimony in any inquiry, investigation, hearing or proceeding pertinent or material thereto in any part of the State."

[4]Section 11186 provides: "The superior court in the county in which any hearing is held under the direction of the head of a department has jurisdiction to compel the attendance of witnesses, the giving of testimony and the production of papers, books, accounts and documents as required by any subpena issued by the head."

[5]Section 11187 provides: "If any witness refuses to attend or testify or produce any papers required by such subpena the head of the department may petition the superior court in the county in which the hearing is pending for an order compelling the person to attend and testify or produce the papers required by the subpena before the officer named in the subpena.

"The petition shall set forth that:

"(a) Due notice of the time and place of attendance of the person or the production of the papers has been given.

"(b) The person has been subpenaed in the manner prescribed in this article.

"(c) He has failed and refused to attend or produce the papers required by subpena before the officer in the cause or proceeding named in the subpena, or has refused to answer questions propounded to him in the course of the investigation or hearing."

[6]Section 11188 provides: "Upon the filing of the petition the court shall enter an order directing the person to appear before the court at a specified time and place

they should not be required to conform to the demands of the subpoenas duces tecum. Service of the orders to show cause was made on Mr. Cohn as president of the corporations, but again they failed to respond. This resulted in the entry of orders on December 22, 1967, directing each corporation to "appear before the Attorney General of the State of California· or his duly authorized representative at Room 6000 State Building, San Francisco, California, on the 8th day of January, 1968, at the hour of 10:00 a.m. or at such other time and place as may be mutually agreed upon prior to January 8, 1968, then and there to produce the documents, books, records, papers and other items designated in Exhibit 'A' to the Subpoena Duces Tecum." These are the orders from which the corporations have appealed. The appeals have been consolidated for hearing and disposition.

■ From the record and briefs before us it appears that the appeals must be dismissed for the reason that they are now moot, the subject orders having been set aside by the superior court.

Following entry of the orders of December 22, 1967, notices of appeal were filed therefrom on February 9, 1968. Thereafter in each proceeding and on March 18, 1968, the superior court found that the orders of December 22, 1967, "compelling [appellants] to attend and produce certain documents before the Attorney General of the State of California [were] improperly issued and therefore unenforceable in that neither the record of this proceeding, as of December 22, 1967, nor the order[s] of this court of December 22, 1967, recited proper service of the Order[s] to Show Cause and related documents on which the December 22, 1967 order[s are] based." It was thereupon "ORDERED, ADJUDGED AND DECREED . . . that the order[s] of this court of December 22, 1967, having been improperly issued, [are] set aside and without further effect. This order is entered without prejudice to petitioner herein applying to this court for . . . new order[s] compelling production of any documents previously subpoenaed herein."

The above described March 18, 1968 orders were entered as a result of the successful insistence of counsel for appellants' president Robert H. Cohn (who are counsel for appellants on this appeal) on contempt proceedings held February 2 and 9, 1968, that the December 22, 1967 orders were beyond the court's jurisdiction and therefore void and unenforceable.

---

and then and there show cause why he has not attended or testified or produced the papers as required. A copy of the order shall be served upon him. If it appears to the court that the subpena was regularly issued by the head of the department, the court shall enter an order that the person appear before the officer named in the subpena at the time and place fixed in the order and testify or produce the required papers. Upon failure to obey the order, the person shall be dealt with as for contempt of court."

The contentions were based upon the absence from the court's records, at the time the orders were made, of any proof of service of the antecedent orders to show cause (required by § 11188, see fn. 6, *ante*) upon the subject corporations.

On these appeals, and for the same reasons urged in the superior court on Mr. Cohn's contempt proceedings, appellants insist that the appealed from orders of December 22, 1967, were beyond the superior court's jurisdiction and therefore void and unenforceable.

The above described orders of March 18, 1968, setting aside the orders here under appeal, are now final. Obviously then, appellants are in no way "aggrieved" by the earlier orders and their appeals have become moot.

One who is not aggrieved by a decision of the lower court has no right of appeal therefrom. (Code Civ. Proc., § 902, formerly § 938; *Radunich* v. *Basso*, 235 Cal.App.2d 826, 829-830 [45 Cal.Rptr. 824]; *Danielson* v. *Stokes*, 214 Cal.App.2d 234, 237 [29 Cal.Rptr. 489]; *Lamb* v. *Belt Cas. Co.*, 3 Cal.App.2d 624, 634 [40 P.2d 311].) And of course an appeal which has become moot is subject to dismissal. (*Paul* v. *Milk Depots, Inc.*, 62 Cal.2d 129, 132 [41 Cal.Rptr. 468, 396 P.2d 924].)

Nevertheless, appellants contend that the March 18, 1968 orders "setting aside" the orders which are the subject of this appeal were invalid because of Code of Civil Procedure section 946 (since reenacted in substance as Code Civ. Proc., § 916) which stayed "further proceedings in the court below upon the order appealed from." But the rule of former Code of Civil Procedure section 946 is subject to this well recognized exception: "[A] court may set aside a void order at any time. An appeal will not prevent the court from at any time lopping off what has been termed a dead limb on the judicial tree—a void order." (*Macmillan Petroleum Corp.* v. *Griffin*, 99 Cal.App.2d 523, 533 [222 P.2d 69]; see also *Roberts* v. *Roberts*, 241 Cal.App.2d 93, 98-99 [50 Cal.Rptr. 408]; *People* v. *Blume*, 183 Cal.App.2d 474, 477-478 [7 Cal.Rptr. 16]; *Pacific Hardware & Steel Co.* v. *Cheim*, 169 Cal.App.2d 339, 343-344 [337 P.2d 508]; *Batte* v. *Bandy*, 165 Cal.App.2d 527, 538 [332 P.2d 439]; *Harris* v. *Board of Education*, 152 Cal.App.2d 677, 680-681 [313 P.2d 212].)

" 'It is well settled that a judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry, by the court which rendered the judgment or made the order. . . .' " (*Hayashi* v. *Lorenz*, 42 Cal.2d 848, 851 [271 P.2d 18].) It may be set aside on the court's own motion (*Montgomery* v. *Norman*, 120 Cal.App.2d 855, 858 [262 P.2d 360]), and by a judge other than the one who made it (*Myers* v. *Washington*, 211 Cal.App.2d 767, 771 [27 Cal.Rptr. 778]; *Ross* v. *Murphy*, 113 Cal.App.2d 453, 455 [248 P.2d 122]).

We are unimpressed by appellants' argument that although the orders here under appeal are in fact void, nevertheless in determining the validity of the appeals the same orders must be deemed valid. As was said in *Alexander* v. *Hammarberg*, 103 Cal.App.2d 872, 879 [230 P.2d 399], "These two positions are entirely inconsistent. The courts will not recognize nor tolerate such tactics. A party may not thus 'blow hot and cold.' " (See also *Kirk* v. *Rutherford*, 137 Cal.App.2d 681, 683 [290 P.2d 883]; *Schulze* v. *Schulze*, 121 Cal.App.2d 75, 83 [262 P.2d 646]; *Conlin* v. *Southern Pac. R.R. Co.*, 40 Cal.App. 743, 747 [182 P. 71].)

■ In their briefs appellants make a broad constitutional attack on the pertinent provisions of the Government Code and the manner in which the Attorney General has attempted to give them effect. All parties to the appeal appear to wish a decision on these questions. While such wishes are not necessarily controlling where an appeal is subject to dismissal, it appears to us that such a decision on the issues raised would here be in the public interest. The Attorney General's investigation of the carnival industry has now been stymied for almost three years. Another attempt to subpoena appellants' records has been held up in the superior court pending a decision on the constitutional questions here raised. If the instant appeal is dismissed without consideration of its issues, similar proceedings and similar appeals will undoubtedly follow with consequent additional delays.

■ It is now established law that where, as in the cases at bench, issues on appeal affect the general public interest and the future rights of the parties, and there is reasonable probability that the same questions will again be litigated and appealed, an appellate court may, although the appeal be subject to dismissal, nevertheless adjudicate the issues involved. (See *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind*, 67 Cal.2d 536, 542 [63 Cal.Rptr. 21, 432 P.2d 717]; *County of Madera* v. *Gendron*, 59 Cal.2d 798, 804 [31 Cal.Rptr. 302, 382 P.2d 342, 6 A.L.R. 3d 555]; *Di Giorgio Fruit Corp.* v. *Department of Employment*, 56 Cal.2d 54, 58-59 [13 Cal.Rptr. 663, 362 P.2d 487]; *Department of Agriculture* v. *Tide Oil Co.*, 269 Cal.App.2d 145, 150-151 [74 Cal.Rptr. 799]; *Kirstowsky* v. *Superior Court*, 143 Cal.App.2d 745, 749 [300 P.2d 163]; *Rattray* v. *Scudder*, 67 Cal.App.2d 123, 127-128 [153 P.2d 433].)

■ We therefore choose to pass upon such of the issues raised by appellants as are likely to be of future recurrence.

■ The Attorney General did not, in connection with the issuance and service of the subject section 11181 subpoenas duces tecum, make the "good cause" showing, i.e., the relevancy and materiality of the matter sought to be produced, by affidavit as provided in Code of Civil Procedure sections

1985[7] and 2036.[8] Appellants contend that this is a Fourth Amendment deficiency giving to the subject process the nature of the abhorrent "General Warrant," "General Search" and "Writ of Assistance" of early American history.

Code of Civil Procedure sections 1985 and 2036 apply to proceedings of a *judicial* nature. Section 1985 refers to "applications before trial for a subpoena duces tecum"; section 2036 requires that its showing of "good cause" and "any showing made in opposition thereto shall be made in the trial court . . . ." The requirements of those sections tend to prevent an abuse of discovery and to guard against Fourth Amendment and other constitutional encroachment. The party seeking such production of documents by subpoena duces tecum is required to make a showing of the necessary materiality and relevancy at the time he secures the subpoena. Accordingly it has been consistently held that before a subpoena duces tecum may issue under Code of Civil Procedure section 1985 the party seeking it must show "that the documents sought to be produced for inspection will aid in his case" thus enabling the trial court to make "an informed ruling on the issues of good cause." (*Associated Brewers Distributing Co.* v. *Superior Court,* 65 Cal.2d 583, 586-587 [55 Cal.Rptr. 772, 422 P.2d 332].) The showing must be of specific facts justifying discovery (*Johnson* v. *Superior Court,* 258 Cal.App.2d 829, 836 [66 Cal.Rptr. 134]), the test being whether the material sought to be discovered is "(1) relevant to the subject matter, (2) material to the issues and (3) needed for effective prepara-

[7]Code of Civil Procedure section 1985, as in effect at the time of the proceedings below, provided: "The process by which the attendance of a witness is required is the subpoena. It is a writ or order directed to a person and requiring his attendance at a particular time and place to testify as a witness. It may also require him to bring with him any books, documents, or other things under his control which he is bound by law to produce in evidence. When a county recorder is using the microfilm system for recording, and he is subpoenaed to present a record, he shall be deemed to have complied with the subpoena if he produces a certified copy thereof. [¶] An application before trial for a subpoena duces tecum shall be, or contain, an affidavit showing good cause for the production of the matters and things described in such subpoena and shall specify the exact matters or things desired to be produced, shall set forth in full detail the materiality thereof to the issues involved in the case, and shall state that the witness has the desired matters or things in his possession or under his control."

The section was amended in 1968 in a manner unrelated to the issues of these cases.

[8]Code of Civil Procedure section 2036 provides: "(a) A party required to show 'good cause' to obtain discovery under any provisions of Chapter 2 (commencing with Section 1985) or of Article 3 (commencing with Section 2016) of Chapter 3 of this title shall show specific facts justifying discovery and mere proof of the relevance of the information sought to the subject matter of the action shall not be sufficient.

"(b) The showing set forth in subdivision (a) of this section and any showing made in opposition thereto shall be made in the trial court prior to that court's determination of the matter."

tion for trial." (*Elmore* v. *Superior Court,* 255 Cal.App.2d 635, 638-639 [63 Cal.Rptr. 307].)

On the other hand sections 11180-11191 relate not to *judicial proceedings* but instead to statutorily permitted *investigations* in which the court ordinarily plays no part. *Brovelli* v. *Superior Court* (1961) 56 Cal.2d 524, 529 [15 Cal.Rptr. 630, 364 P.2d 462], a case also concerned with sections 11180-11191, states: "As has been said by the United States Supreme Court, the power to make administrative inquiry is not derived from a judicial function but is more analogous to the power of a grand jury, which does not depend on a case or controversy in order to get evidence but can investigate 'merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.' (*United States* v. *Morton Salt Co.,* 338 U.S. 632, 642-643 [70 S.Ct. 357, 94 L.Ed. 401].)"

To accomplish this investigative purpose, an entirely different legislative scheme was developed. Adequate safeguards against constitutional deprival or other abuse of process are provided. *Brovelli* v. *Superior Court, supra,* recites (p. 529): "Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant." The requirement that the information sought be "reasonably relevant," of course means reasonably relevant to the intended investigation, not to any judicial issues or hearing. If a person affected by the Government Code process shall believe that *Brovelli's* requirements are not met, without contempt or other penalty he need not respond. Thereupon the investigating agency is obliged, on an order to show cause, to arrange a superior court hearing at which conformity of the subpoena duces tecum to constitutional and legal standards may be judicially tested. (§§ 11187, 11188; see fns. 5 and 6 *ante.*) Thus, the Government Code provides an opportunity for adjudication of all claimed constitutional and legal rights before one is required to obey the command of a subpoena duces tecum issued for investigative purposes. This is an equivalent, if not greater, measure of constitutional protection to that afforded in judicial proceedings under Code of Civil Procedure sections 1985 and 2036.

Accordingly we hold that failure to follow Code of Civil Procedure sections 1985 and 2036, or some similar practice, does not render proceedings under Government Code sections 11180-11191 constitutionally invalid.

We advert now to the remaining constitutional issues raised by appellants. They insist that sections 11180-11191 contravene the Fourth Amend-

ment, the "due process" clause of the Fourteenth Amendment, and the corresponding provisions of the Constitution of this state (art. I, §§ 13, 19).

The same Fourth Amendment contention was made to, and rejected by, the California Supreme Court in *Brovelli* v. *Superior Court, supra,* 56 Cal.2d 524. Reviewing the statutes with which we are here concerned (§§ 11180-11191), the court found no constitutional fault. It was pointed out (p. 529) that where, as here, "the records of a corporation are the object of a subpena, the situation differs from one where the private papers of an individual are sought. Neither the corporation nor a person having custody of its records can refuse to produce them on the basis of the privilege against self-incrimination. (*Wilson* v. *United States,* 221 U.S. 361, 377 et seq. [55 L.Ed. 771, 778, 31 S.Ct. 538]; see *Curcio* v. *United States,* 354 U.S. 118, 122 [1 L.Ed.2d 1225, 1228-1229, 77 S.Ct. 1145].) Insofar as the prohibition against unreasonable searches and seizures can be said to apply at all it requires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant. (*United States* v. *Morton Salt Co., supra,* 338 U.S. 632, 651-654 [94 L.Ed. 401, 415-417]; *Oklahoma Press Pub. Co.* v. *Walling,* 327 U.S. 186, 202 et seq. [90 L.Ed. 614, 625, 66 S.Ct. 494, 166 A.L.R. 531].)"

While appellants dispute the reasoning and authority of *Brovelli,* we as an intermediate appellate court are bound by that decision. (*Auto Equity Sales, Inc.* v. *Superior Court,* 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Orange County Water Dist.* v. *City of Riverside,* 173 Cal.App. 2d 137, 165 [343 P.2d 450].) We apply it here.

The claimed "due process" shortcoming of the statute is not pointed out or argued by appellants in their briefs and may, therefore, be considered abandoned. (*Estate of Lee,* 225 Cal.App.2d 578, 582 [37 Cal.Rptr. 572].) They do comment that many of the first 10 amendments "are so basically declarative of justice and fair dealing that they have been included by the Supreme Court in the due process clause of the Fourteenth Amendment and are now binding on the states." With this, of course, we agree. But we find no "due process" deprivation in the subject statute; and as we have pointed out ample provision for notice and hearing is provided before one's papers may be exposed by the "investigative" subpoena duces tecum.

As there is little probability that other issues posed by appellants will recur in the future, we do not consider them.

For the reasons stated the appeals are dismissed.

Molinari, P. J., and Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 9, 1970.