[Civ. Nos. 37636, 37937. Second Dist., Div. Five. Jan. 13, 1972.]

IVAR LOVRET, Plaintiff and Appellant, v.
FRIEDA SEYFARTH et al., Defendants and Appellants.

(Consolidated Appeals.)

844

## Counsel

Leslie Mann, Jr., for Plaintiff and Appellant.

Roberts & Piatt and Harry R. Roberts for Defendants and Appellants.

## Opinion

**AISO, J.**—These consolidated appeals (2d Civ. Nos. 37636 and 37937) are, respectively, from minute orders made on November 25, 1969, and August 14, 1970, after entry on October 31, 1967, of a judgment which purported to correct and confirm, as corrected, an arbitration award. The judgment was rendered and caused to be entered by Court Commissioner Pfau acting as a temporary judge,[1] but without a stipulation of the parties.

In No. 37636, Frieda Seyfarth and Herman Seyfarth,[2] defendants and

---

[1] We shall for convenience refer to him as temporary judge where the record shows him purportedly acting as such rather than in the capacity of a court commissioner. We use the term "unqualified temporary judge" only in the sense that the requirements of *People* v. *Tijerina, infra,* were not met. The legal learning, character and integrity of the commissioner are not questioned.

[2] Herman Seyfarth died, pending appeal, on January 31, 1971, and Frieda Seyfarth as the executrix of his last will was substituted in his place by superior court order dated October 15, 1971. (Certified copy in the file.) In the interests of clarity, we shall continue to use the term, "Seyfarths," when we refer to Herman and Frieda Seyfarth collectively, and their first names, "Herman" and "Frieda," respectively, when it is necessary to distinguish between the two.

appellants, appeal from the November 25, 1969, order which was made by the same temporary judge in response to a motion by plaintiff and respondent Ivar Lovret, entitled, "motion to modify interlocutory and conditional judgment, and to order issuance of writ of execution." The order in the part relevant here reads: "[T]he court now finds and orders as follows: Ivar Lovret has complied with tender condition precedent as described in Judgment herein. [¶] Let Execution issue consistent with said Ivar Lovret's further declaration re amounts unpaid."

In No. 37937, plaintiff Ivar Lovret appeals from the order of August 14, 1970, made by Judge John A. Arguelles, which: (1) recalled and quashed the writ of execution issued at Lovret's instance, (2) vacated the levy of execution of funds ($1,117.64 approximately) belonging to the Seyfarths in the Pomona Main Office of the United California Bank and turned over to the custody of the Marshal of Los Angeles County, (3) vacated the order of November 25, 1969, as to both Seyfarths, and (4) vacated the judgment entered October 31, 1967, and provided in lieu thereof: "Said Judgment to be set aside in its entirety as to Frieda Seyfarth only; and said Judgment to be vacated and set aside as to Defendant Herman Seyfarth with a direction that the matter as to Herman Seyfarth be returned to arbitration for further proceedings resulting in a final determination of the issues."

## I.

The initial question is the determination of the validity of the two orders before us on this appeal. Resolution of this question may be made on the basis of procedural laws without getting into the substantive merits of the dispute. Consequently, at this point we recite only the facts and procedural background necessary to make this determination.

On June 25, 1965, a building construction contract between Mr. and Mrs. Herman Seyfarth of 4033 Mt. Baldy Road, Claremont, California, and Ivar Lovret (the contractor) was entered into wherein Lovret agreed "to construct and complete in a good, workmanlike and substantial manner," and to furnish "all labor, materials, tools and equipment therefor," a frame and stucco dwelling on "Lots 16 & 17, Tract No. 13731 M.B. 314-6-7 County of Los Angeles, State of California," for $34,950. The contract contained an arbitration provision[3] and one for court costs and

---

[3] "16. Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

reasonable attorney's fee to the successful party.[4] The construction contract, however, was signed only by the husband, Herman Seyfarth, and the contractor, Ivar Lovret.

During the course of construction, a controversy arose between the Seyfarths and Lovret as to whether Lovret was performing in compliance with the contract. The matter was referred to arbitration and Arthur F. O'Leary was appointed arbitrator. The proceedings were commenced against Herman only, but later Frieda was also made a party to the arbitration.[5] The arbitrator held hearings on June 10, 17, August 12, and October 28, 1966, and made his award on December 16, 1966, which provided as follows:

"(A) IVAR LOVRET, hereinafter sometimes referred to as CONTRACTOR, shall tender to FRIEDA SEYFARTH and HERMAN SEYFARTH, hereinafter sometimes referred to as OWNERS, a full release of any and all liens which CONTRACTOR claims against OWNERS or OWNERS' property, and which assertedly arise out of the construction contract dated June 25, 1965. Upon such tender the OWNERS shall forthwith pay to CONTRACTOR the sum of SIX THOUSAND ONE HUNDRED EIGHTY SIX DOLLARS and NINE CENTS ($6,186.09), and OWNERS shall accept delivery of the aforesaid lien releases.

"(B) The Counterclaim filed by the OWNERS against the CONTRACTOR is denied.

"(C) The administrative fees and expenses of the American Arbitration Association which total $641.04, shall be borne equally by the parties. Therefore, CONTRACTOR shall pay to the Association $31.48,[6] and the OWNERS shall pay to the Association $30.52.

"(D) This Award is in full settlement of all Claims and Counterclaims submitted by either party against the other under the construction contract dated June 25, 1965."

Copies of this award were mailed to the then respective attorneys of record for Lovret and the Seyfarths on December 16, 1966.

---

[4]"17. Should either party hereto bring suit in court to enforce the terms hereof any judgment awarded shall include court costs and reasonable attorney's fees to the successful party."

[5]Much is made by Frieda on this appeal that she did not sign the construction agreement and that since the construction took place on a parcel of property that was her separate (not community) property, she is not bound by the award or the court proceedings below. Lovret argues that she participated in the arbitration, filed cross-demands, and caused workmen's and materialmen's liens on the property to be removed as a part of the judgment confirming the award and is therefore estopped from raising her claimed defense at this time. We deal with this aspect of the litigation later.

[6]Apparently part of the expenses had been advanced by the parties.

On January 30, 1967, Lovret filed his petition in the superior court to confirm the award and for entry of judgment thereon. Among other things, the petition alleged in paragraph I the making of the contract of June 25, 1965, between Lovret and Frieda and Herman, and attached a copy thereof as Exhibit "A." Lovret further alleged in paragraph VI: "Petitioner has tendered a full release of all liens which he had claimed against the Seyfarths as required by the award." In paragraph VII, he averred: "In spite of demand upon the Seyfarths for payment of the award, the Seyfarths refuse to do so, and it has, therefore, become necessary for petitioner to employ attorneys to bring this suit to enforce the terms of the award."

On February 2, 1967, Lovret noticed a hearing on his petition for February 23, 1967. On March 15, 1967, he noticed a hearing for April 6, 1967. On April 6, 1967, the hearing was continued to April 20, 1967.

On April 14, 1967, Frieda and Herman filed an "Answer to Petition to Confirm Award." This answer denied only the allegations of paragraphs VI and VII, set forth above, and pleaded affirmatively that the award required releases not only of Lovret's mechanic's lien, but also "all material and labor releases from the various sub-contractors and materialmen who either supplied said materials or performed labor on said premises commonly known as *4033* Mt. Baldy Road, Claremont, California, and more particularly described as: Lots 16 and 17 of Tract 13731 as per Map recorded in Book 314 at Page 6 & 7 of Maps, Records of Los Angeles County, California" (italics added)[7] and that Lovret had refused to tender such releases to them. They further alleged that this was what the arbitrator had intended and that they were ready, willing and able to pay Lovret the $6,186.09 upon receiving such releases.

On April 20, 1967, the parties appeared before Temporary Judge Pfau. As earlier noted, no stipulation, written or oral, by the parties agreeing to Commissioner Pfau acting as temporary judge is in the record. The only document in this regard is a county clerk's certificate that Glenn M. Pfau was duly appointed judge pro tempore of the Superior Court of Los Angeles County of the State of California, pursuant to court order of Louis H. Burke, Presiding Judge, dated November 24, 1958, and Pfau's oath of office as judge pro tempore taken on May 3, 1961. At this April 20, 1967, hearing, the testimony of a subcontractor (Dodson) was taken. Pursuant to stipulation, the Seyfarths' answer was ordered deemed a re-

---

[7]Subsequent to this time, Seyfarths have claimed that releases giving *4033* Mt. Baldy Road were not proper and that the number should be *4023*. This answer may explain why so many of the releases or waivers tendered after the filing of the answer gave the street number as 4033.

quest to correct award and each party in open court waived the provisions of the Code of Civil Procedure section 1288.2.[8] Further hearing was continued to April 27, 1967.

On April 27, 1967, the matter was ordered off calendar. On May 8, 1967, the parties filed a written stipulation that the matter previously set for April 27, 1967, be continued to June 8, 1967, and that further notice of hearing be waived.

On June 5, 1967, Lovret filed a declaration, which listed 20 subcontractors or materialmen and declared that he had obtained releases from all of them with the exception of Richard Dodson, the painter, and Carey E. Prock Construction Co. "In any event," he further declared, "I can indemnify against any possible claims by Mr. Prock, as well as Mr. Dodson, the painter." He attached to his declaration 17 waivers of mechanic's liens from such subcontractors or materialmen.

On June 8, 1967, the parties appeared through respective counsel of record. It was stipulated that the exhibits attached to Lovret's declaration could be considered without their formal incorporation into Lovret's declaration. Findings of fact and conclusions of law were waived in open court and the matter was submitted.

On June 12, 1967, Temporary Judge Pfau announced his intended decision to correct the award and to confirm the award as corrected.[9]

---

[8]This section provides: "A response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award upon: (a) The respondent if he was a party to the arbitration; or (b) The respondent's representative if the respondent was not a party to the arbitration."

[9]The minute order read: "Matter heretofore having been ordered submitted the Court now enters the following order: the Court finds there is a mistake in the description of things or property referred to in the award, namely in the description of liens referred to in paragraph (A) thereof, and that said mistake is not evident from the face of the award but is evident after this Court's examination of the arbitrator.

"Arbitrators award is ordered corrected at paragraph (A), first sentence thereof, to read as follows: '(A) IVAR LOVRET, hereinafter sometimes referred to as CONTRACTOR, shall tender to FRIEDA SEYFARTH and HERMAN SEYFARTH, hereinafter sometimes referred to as OWNERS, a full release of any and all liens which contractor and any person has claimed and will have claimed within the meaning, definition and description of Sections 1180-1203.1, inclusive, of California C.C.P., against owners or owners property, and which assertedly arise out of the construction contract, dated 6/25/65.'

"The balance of said award, (A) through (D) inclusive, shall remain uncorrected.

"Award, as corrected is ordered confirmed. Request for attorneys fees is ordered denied. Each party to bear own costs.

"Counsel for petitioner to prepare and submit form of judgment."

On September 19, 1967, the Seyfarths discharged their attorney, Ben T. Kayashima, and filed a *pro se* document entitled "Petition to Vacate Award and for Re-hearing." On September 25, 1967, the Seyfarths substituted themselves out and Kayashima, Tessier & Schaefer by Philip E. Schaefer in as their attorneys of record.

The temporary judge made numerous changes on the proposed form of judgment and on October 27, 1967, he signed and caused to be filed the judgment confirming award of arbitrator,[10] which was entered October 31, 1967. We find no notice of entry of this judgment, either from the clerk or Lovret's counsel, in the record.

We omit certain other *mesne* proceedings, which appear immaterial to this portion of the opinion, and come to the order of November 25, 1969, made by Temporary Judge Pfau (mentioned at the outset as being the order from which the Seyfarths appeal). Their notice of appeal was filed on January 23, 1970, and was therefore timely. This is the appeal in No. 37636.

On February 16, 1970, through attorneys Roberts and Piatt and Kayashima, Tessier & Schaefer by Harry R. Roberts, the Seyfarths filed a motion to vacate "minute order of November 25, 1969 and judgment confirming award entered October 31, 1967." In response to this motion, Judge David D. French ruled by minute order dated April 9, 1970: "Respondent's Motion to vacate and set aside the Minute Order dated November 25, 1969

---

[10]In its decretal portion, it provided:

"IT IS HEREBY ORDERED that there having been a mistake in the description of things or property referred to in said award, namely in the description of liens referred to in Paragraph (A) thereof, the arbitrator's award is ordered corrected at Paragraph (A) first sentence thereof to read as follows: '(A) Ivar Lovret, hereinafter sometimes referred to as contractor shall tender to Frieda Seyfarth and Herman Seyfarth, hereinafter sometimes referred to as owners a full release of any and all liens which contractor and any person has claimed and will have claimed within the meaning, definition and description of Sections 1180-1203.1 inclusive, of the Code of Civil Procedure of the State of California against owners or owners' property and which assertedly arise out of the construction contract dated June 25, 1965.'

"The balance of said award shall remain uncorrected. In accordance therewith,

"IT IS FURTHER ORDERED that Frieda Seyfarth & Herman Seyfarth shall pay to Ivar Lovret the sum of $6,186.09 forthwith upon tender as provided in said award as corrected & confirmed.

"IT IS FURTHER ORDERED that the unpaid administrative fees and expenses of the American Arbitration Association shall be paid to said association as follows: Ivar Lovret shall pay to the Association $31.48. Frieda Seyfarth and Herman Seyfarth shall pay to the Association $30.52.

"IT IS FURTHER ORDERED that this award is in full settlement of all claims and counter-claims submitted to arbitration by either party against the other under the construction contract dated June 25, 1965.

"IT IS FURTHER ORDERED that the request for attorneys' fees on behalf of petitioner and respondents is denied, each party to bear his own costs.

"The clerk is ordered to enter this Judgment."

is denied. [¶] Respondent's Motion to vacate and set aside the Judgment Confirming Award of Arbitrator entered herein October 31, 1967 is denied. [¶] Respondent's Motion to Stay a Writ of Execution is denied." No appeal was taken from this order of April 9, 1970.

On July 14, 1970, the Seyfarths, through attorneys Roberts and Piatt by Harry R. Roberts, filed another motion to quash execution, to vacate levy of execution, and to vacate judgment and minute order. The motion was heard by Judge John A. Arguelles on August 10, 1970, and submitted for decision. On August 14, 1970, he ruled by minute order:

"1. The Court orders that the Writ of Execution heretofore issued be recalled and quashed.

"2. The Court orders the vacating of the Levy of Execution heretofore made on funds of the Respondents formerly on deposit in the United California Bank, Pomona Main Office, Pomona, California, in the bank account belonging to and in the name of the Respondents, which funds have been levied upon and paid over to and are now in the hands of the Marshal of Los Angeles County in the approximate sum of $1,117.64.

"3. The Court orders the vacating and setting aside of the Minute Order dated November 25, 1969, in its entirety as to both Frieda Seyfarth and Herman Seyfarth.

"4. The Court orders the vacating and setting aside of the Judgment Confirming Award of Arbitrator dated October 27, 1967, and entered in the Judgment Roll October 31, 1967, as follows:

"Said Judgment to be set aside in its entirety as to Frieda Seyfarth only; and said Judgment to be vacated and set aside as to Defendant Herman Seyfarth with a direction that the matter as to Herman Seyfarth be returned to arbitration for further proceedings resulting in a final determination of the issues."

Lovret filed his notice of appeal from the foregoing order on October 5, 1970, and this constitutes the basis of the appeal in No. 37937.

To minimize repetition, other facts, procedural or substantive, will be mentioned where pertinent to the matter under discussion.

## II.

The threshold question as to the November 25, 1969, order is whether it is an appealable order. Section 1294, subdivision (e), of the

Code of Civil Procedure[11] provides that in arbitration cases, an aggrieved party may appeal from a special order after final judgment. This is such an order. Reference to post-judgment orders made appealable under section 904.1, subdivision (b), reinforces our conclusion. Under section 904.1, subdivision (b), it has been held that a post-judgment order for the issuance of a writ of execution is directly appealable. (*Weil* v. *Weil* (1950) 97 Cal.App.2d 378, 379 [217 P.2d 979]; *Peterson* v. *Lampton* (1941) 46 Cal.App.2d 751, 754 [116 P.2d 952]; *Crowley* v. *Superior Court* (1936) 17 Cal.App.2d 52, 54 [61 P.2d 372].) Here the order adjudicated that Lovret had complied with the condition precedent in the judgment and ordered writ of execution to issue upon Lovret's declaration of the amount remaining unpaid on the judgment. It is generally held that a post-judgment order which affects the judgment in some manner or in its enforcement is directly appealable. (See: *Imperial Beverage Co.* v. *Superior Court* (1944) 24 Cal.2d 627, 632 [150 P.2d 881]; *Lake* v. *Harris* (1926) 198 Cal. 85, 89 [243 P. 417].) "Orders made to enforce a judgment or to prevent its enforcement are appealable. The principle is that an order which affects enforcement of the judgment is appealable whether it favors the judgment creditor or the judgment debtor. (*Baum* v. *Baum* (1959) 51 Cal.2d 610, 614, 335 P.2d 481.)" 6 Witkin, California Procedure (2d ed. 1971) Appeal, section 82, page 4093. The appealability of the order is not affected despite the fact that we hold the order to be void (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 370 [217 P.2d 951]; *Frustuck* v. *City of Fairfax* (1963) 212 Cal.App.2d 345, 375-376 [28 Cal.Rptr. 357]).

The Seyfarths cite *People* v. *Tijerina* (1969) 1 Cal.3d 41, 48-49 [89 Cal.Rptr. 264, 459 P.2d 680], and contend that since there is no stipulation, oral or written, of the parties that Commissioner Pfau could sit as a temporary judge, the judgment and the order of November 25, 1969, are both void. In *Tijerina,* our Supreme Court speaking through Chief Justice Traynor agreed with a similar contention made by a defendant under similar circumstances in a criminal case, stating (p. 48): "Defendant contends that the order is void on the ground that no stipulation was entered into permitting the commissioner to act as a temporary judge in the case in which it was entered. We agree with this contention." The court held the provisions of section 21, article VI, of our state Constitution dispositive of the issue and no discussion concerning any *de facto* judge doctrine appears in the opinion. The case of *Estate of Soforenko* (1968) 260 Cal.App.2d 765 [67 Cal.Rptr. 563], cited by Lovret, was mentioned in the *Tijerina* opinion without its inclusion in the list of cases expressly disapproved. However, the opinion would indicate that it was cited only

---

[11]All references to code sections refer to sections of the Code of Civil Procedure unless otherwise noted.

for the purpose of discussing the 1966 revision of the state Constitution which embodied the portion cited above. It has also been held that participation of the parties in a trial or hearing before a disqualified judge, whose decision is later determined to be void, does not estop the parties from later asserting the invalidity of the judicial action. (*Cadenasso* v. *Bank of Italy* (1932) 214 Cal. 562, 567, 568 [6 P.2d 944].) Feeling bound by *Tijerina* and *Cadenasso,* we reluctantly rule that the judgment purporting to confirm the arbitration award and the order of November 25, 1969, are both void; we use the term "reluctantly" only in the sense that by so ruling so much of the judicial and legal labors expended, together with the time of the litigants and witnesses, must be discarded as vain and abortive expenditures of time, effort, and money.

Although the order of Judge Arguelles made on August 14, 1970, from which Lovret appeals, has rendered the question as to the validity of both the judgment confirming the award and the order of November 25, 1969, moot, we reverse the order rather than dismiss the appeal in order to keep the record, already confusing, from becoming more so. (See: *Paul* v. *Milk Depots, Inc.* (1964) 62 Cal.2d 129, 134 [41 Cal.Rptr. 468, 396 P.2d 924]; *Callie* v. *Board of Supervisors* (1969) 1 Cal.App.3d 13, 19 [81 Cal. Rptr. 440]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 471, p. 4428.)

## III.

There can be no doubt as to the appealability of the order of August 14, 1970, made by Judge Arguelles, from which Lovret appeals (No. 37937). This order, among other things, vacated the judgment of Temporary Judge Pfau entered October 31, 1967, vacated the order of November 25, 1969, made by Temporary Judge Pfau, recalled and quashed a writ of execution based on the judgment, and vacated a levy of execution. These orders of vacation are all special orders made after the final judgment confirming the award and made expressly appealable by section 1294, subdivision (e). In connection with cases not involving arbitration awards, the following types of orders have been held appealable as special orders after final judgment: an order vacating a judgment and recalling a writ of execution issued on the judgment (*Snyder* v. *Plummer* (1917) 174 Cal. 204 [162 P. 1040]); an order granting a motion to vacate a judgment on the ground that no personal jurisdiction had been obtained over a judgment defendant (*Coan* v. *Superior Court* (1939) 14 Cal.2d 591 [95 P.2d 931]); an order recalling a writ of execution (*Stegge* v. *Wilkerson* (1961) 189 Cal.App.2d 1, 4 [10 Cal.Rptr. 867]); and an order recalling a writ of execution and vacating an order authorizing an issuance of the writ of execution (*Demens* v. *Huene* (1928) 89 Cal.App. 748, 751-752 [265 P. 389]).

■ Insofar as this order accomplishes the foregoing objectives, it must be affirmed. The judgment entered October 31, 1967, and the order of November 25, 1969, were void on their face because the lack of the stipulation of the parties is disclosed by an examination of the judgment roll or of the record. ■ It is the settled law of California that a judgment or order which is void on its face, because its infirmity is determinable from an inspection of the judgment roll or the record, may be set aside on motion at any time after its entry by the court which rendered the judgment or made the order. (*Hayashi* v. *Lorenz* (1954) 42 Cal.2d 848, 851 [271 P.2d 18]; *Luckenbach* v. *Krempel* (1922) 188 Cal. 175, 176-177 [204 P. 591]; *Nagel* v. *P & M Distributors, Inc.* (1969) 273 Cal.App.2d 176, 179-180 [78 Cal.Rptr. 65]; see 5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 166, p. 3739.)

■ As to such void judgments or orders, the normal rule that "the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order" (§ 916, subd. (a)) does not apply. "[A] court may set aside a void order at any time. An appeal will not prevent the court from at any time lopping off what has been termed a dead limb on the judicial tree—a void order." (*MacMillan Petroleum Corp.* v. *Griffin* (1950) 99 Cal.App.2d 523, 533 [222 P.2d 69]; accord: *People* v. *West Coast Shows, Inc.* (1970) 10 Cal. App.3d 462, 467 [89 Cal.Rptr. 290]; *Svistunoff* v. *Svistunoff* (1952) 108 Cal.App.2d 638, 641-642 [239 P.2d 650]; and see: 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 7, pp. 4024-4025.) ■ Consequently, notwithstanding the pending appeal from the earlier order of November 25, 1969, which necessarily carried with it a consideration of the validity of the judgment entered October 31, 1967, the order of August 14, 1970, limited to those aspects which trim off the void judgment and orders, should be affirmed.

However, to the extent that it goes beyond the trimming of dead limbs and goes on to provide that in lieu of the judgment vacated the judgment is to be set aside in its entirety as to Frieda Seyfarth and thereby relieves her of liability and that the matter of Herman is to be returned to arbitration for further proceedings to attain a final determination of the issues, Judge Arguelles was without jurisdiction, because these matters were matters embraced within the appeal from the November 25, 1969, order which was not restricted solely to the question of Commissioner Pfau's power to act as a temporary judge. ■ It is true that where the award fails to settle all the issues of the dispute submitted to arbitration, the court may vacate the award and refer the matter back to the arbitrator. (*Banks* v.

*Milwaukee Ins. Co.* (1966) 247 Cal.App.2d 34, 38-39 [55 Cal.Rptr. 139]; §§ 1283.4 and 1287.) In *Film Technicians* v. *Color Corp. America* (1956) 141 Cal.App.2d 553, 555-556 [297 P.2d 86], cited by the Seyfarths, the arbitrator found that certain groups of employees were entitled to dismissal pay under a collective bargaining agreement to which the employer was a party. It failed to specify the employees by name and precise amounts due to each. The trial court vacated the award and exercised its discretion by remanding the matter back to the arbitrator. The appellate court held that this was proper since the award was not a mutual, final and definite award, upon the subject matter submitted. It is also true that the power of the court to correct an award, in absence of a stipulation, is limited by section 1286.6.[12] (Cf. *Solari* v. *Oneto* (1958) 166 Cal.App.2d 145, 153-154 [333 P.2d 218].) But in the instant case, it was stipulated that Seyfarths' answer be deemed a request for corrections (not to vacate the award) and they obtained such corrections as they sought by their answer. Having thus stipulated, and having received the benefit of the arbitrator's testimony given in open court followed with the corrections requested, had the judgment of confirmation been corrected and confirmed as corrected by a duly qualified judge of the superior court, the Seyfarths could ill complain. Since this nonjurisdictional claim of error was also before the appellate court on Seyfarths' appeal from the November 25, 1969, order, Judge Arguelles did not have jurisdiction as to these nonjurisdictional issues. We, therefore, reverse the portion of the August 14, 1970, order which goes beyond vacating the void judgment and orders.

## IV.

The partial reversal of Judge Arguelles' order of August 14, 1970, restores the respective parties to their respective positions prior to the first abortive hearing conducted by the unqualified temporary judge on April

[12]Section 1286.6 provides: "Subject to Section 1286.8, the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

Section 1286.8 provides: "The court may not correct an award unless: (a) A petition or response requesting that the award be corrected has been duly served and filed; or (b) A petition or response requesting that the award be vacated has been duly served and filed and: (1) All petitioners and respondents are before the court; or (2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to correct the award or that the court on its own motion has determined to correct the award and all petitioners and respondents have been given an opportunity to show why the award should not be corrected."

20, 1967. (*Pillsbury* v. *Superior Court* (1937) 8 Cal.2d 469, 472 [66 P.2d 149]; cf. *Hall* v. *Superior Court* (1955) 45 Cal.2d 377, 381 [289 P.2d 431].) It appears appropriate, therefore, to set forth a few guidelines for further proceedings in the trial court.

The first step should be to ascertain whether the petition to confirm the award and the notices of hearing filed prior to the filing of the answer were properly served as required by section 1290.4, for we find no proof of such service either in the appellate record or the trial court file. If proof of service of the petition and a requisite notice can be established, then the ruling of the court in *Coordinated Construction, Inc.* v. *Canoga Big "A," Inc.* (1965) 238 Cal.App.2d 313, 315-318 [47 Cal.Rptr. 749] can be invoked. It was there held that where a petition for confirmation has been served and filed and the requisite notice of hearing served and filed, the time for filing a response is governed by section 1290.6[13] and not section 1288.2.[14] It was there held that the failure to serve and file a response within the 10 days required by section 1290.6 was tantamount to an admission of all of the allegations of the petition and that a judgment entered thereon was valid.

If the *Coordinated Construction* rule is applicable, then it is unnecessary to consider whether the stipulation that the answer be deemed a request to correct award and the waiver of the provisions of section 1288.2 made before the unqualified temporary judge on April 20, 1967, are binding on the rehearing upon remand from this court. The proceedings may proceed, on the authority of the *Coordinated Construction* case, on the basis of the petition to confirm alone.

In any event, under the circumstances of this case, neither the stipulation that the answer be deemed a request to correct the award nor the mutual waiver of the provisions of section 1288.2 (in effect a stipulation to waive) made in open court before the unqualified temporary judge and under his supervision is binding upon the rehearing following remand. "A stipulation . . . is an agreement between counsel with respect to business before a court. It is not one of the usual pleadings, but is a proceeding in the cause and as such is under the supervision of the court,

---

[13]Section 1290.6 provides: "A response shall be served and filed within 10 days after service of the petition [except in situations not involved in this proceeding]. The time provided in this section for serving and filing a response may be extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court."

[14]Section 1288.2 provides: "A response requesting that an award be vacated or that an award be corrected shall be served and filed not later than 100 days after the date of service of a signed copy of the award upon: (a) The respondent if he was a party to the arbitration; or (b) The respondent's representative if the respondent was not a party to the arbitration."

by means of its coercive power over the parties to the suit and their attorneys." (83 C.J.S., Stipulations, § 1, p. 2; see also: *Harris* v. *Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447, 452 [49 Cal.Rptr. 610]; *County of Los Angeles* v. *Bean* (1959) 176 Cal.App.2d 521, 526 [1 Cal.Rptr. 464].) ▆▆▆ The reporter's transcript of the proceedings before the unqualified temporary judge on April 20, 1967, shows that the judge was the one who suggested the stipulation and who initiated the waiver of the provisions of section 1288.2.[15] Under the *Tijerina* rule all actions of the unqualified temporary judge were nullities as previously noted and the parties are restored to their respective positions prior to the hearing, prior to the time the stipulations and waiver were made in the open court proceedings.

Application of the *Coordinated Construction* rule under the circumstances of this case is no harsher than the application of the rule of *Tijerina* in favor of the Seyfarths. We are presented with a record disclosing errors and one that is made confusing due to the frequent change of counsel of record by the Seyfarths from time to time, who in some instances filed *pro se* documents even when represented by counsel. **(9)** The normal rule is that *pro se* documents may not be filed when a

---

[15]"THE COURT [to Lovret's counsel]: Why didn't you petition him [arbitrator] to correct his award?

"[LOVRET'S COUNSEL]: I did not feel that there was a vagueness in the award. I submit that is not even before the Court. That is a matter for counsel to raise and he has not asked for the award to be corrected.

"THE COURT: To dispose of this motion, would you like to have us call him up here and change his award?

"[LOVRET'S COUNSEL]: If your Honor feels it would clarify. I feel it is not properly before this Court.

"THE COURT: Then I would enter an order confirming it as described.

"[LOVRET'S COUNSEL]: I will stipulate to hear it then on that basis assuming—

"THE COURT: I think it wise to have it reflect the intent of the arbitrator.

" · · · · · · · · · · · · · ·

"THE COURT: . . . So, this will be the minute order: [¶] Is there any dispute between you that the Answer here may be deemed request to correct award?

"[LOVRET'S COUNSEL]: No dispute.

"THE COURT: Mr. Kayashima [Seyfarths' counsel]?

"MR. KAYASHIMA: No dispute.

"THE COURT: All right. By stipulation, Answer on file is ordered deemed request to correct award."

(After the temporary judge ascertained that copies of the award had been served on December 16, 1966, the court continued):

"THE COURT: Then the next part of the minute order will be: Each party herein waives the provisions of CCP 1288.2. [¶] That section, gentlemen, requires service and filing of a response requesting correction within a hundred days after service of signed copy of award. Do you waive the provisions of that section?

"[LOVRET'S COUNSEL]: Yes.

"THE COURT: Both of you?

"[SEYFARTHS' COUNSEL]: Yes.

"THE COURT: Mr. Hanlon [clerk], each party in open court has this date waived the provisions of CCP 1288.2. . . ."

party is represented by counsel.[16] (*People* v. *Mattson* (1959) 51 Cal.2d 777, 798 [336 P.2d 937].) That the arbitrator recognized an ambiguity in the wording of his award is not necessarily binding upon the court. (*Union Local 679* v. *Richmond-Chase Corp.* (1961) 191 Cal.App.2d 841 [13 Cal.Rptr. 341].) Moreover, the question of liens being filed against the property by subcontractors and materialmen appears to have become moot with the passage of time. It appears that Lovret, the contractor, was the only one who actually filed a lien and the time for filing lien claims (§ 1193.1)[17] or for instituting foreclosure proceedings (§ 1198.1) by subcontractors or materialmen has lapsed. ▉ The failure to file the lien claim within the statutory time from cessation of work waives the right to lien. (*Stanislaus Lbr. Co.* v. *Pike* (1942) 51 Cal. App.2d 54, 58 [124 P.2d 190]; *Norton* v. *Bedell Engineering Co.* (1928) 88 Cal.App. 777, 782-783 [264 P. 311].) The failure to institute a foreclosure proceeding within the statutory time serves to "unbind" the property even as to recorded lien claims. (*States Shingle Co.* v. *Kaufman* (1964) 227 Cal.App.2d 830, 835 [39 Cal.Rptr. 196].) Nor does the provision for the tender of a release by the party to be paid a monetary award render the award indefinite. (*Dudley* v. *Thomas* (1863) 23 Cal. 365.) The termination of this long and expensive litigation as early as possible upon a basis legally justifiable and not inequitable on the basis of the record before us appears appropriate.

▉ A. *The award against Herman:* There can be no cavil that Herman is liable to Lovret either for breach of contract or upon false representation of authority to act on behalf of Frieda. There is no question about Herman having signed the building construction contract either as a coprincipal or as an agent. In a statement notarized on October 28, 1967, and attached to a *pro se* document filed by Herman and Frieda on February 26, 1968, Herman stated: "Erroneously my name was placed on the [arbitration] claim and *the only connection I had was as Mrs. Seyfarth's consultant or agent. . . .*" (Italics added.)

Whatever may have been the rule under common law, the death of Herman pending confirmation of the award does not automatically vacate the award. In *Walter* v. *National Indem. Co.* (1970) 3 Cal.App.3d 630, 634-635 [83 Cal.Rptr. 803], the one in whose favor an arbitration award

---

[16]As to exception for signing and filing notices of appeal, see: California Rules of Court, rule 1(a); *City of Downey* v. *Johnson* (1968) 263 Cal.App.2d 775, 780 [69 Cal.Rptr. 830].

[17]The transactions in this case took place prior to the transfer of the mechanic's lien sections from the Code of Civil Procedure to the Civil Code (Stats. 1969, ch. 1362), so we refer to the Code of Civil Procedure sections operative prior to January 1, 1971.

had been made died prior to the institution of the proceeding in the court to confirm the award. The judicial proceedings in that case, held without substituting the predeceased's representative, were held to be void. In this case, the proceedings were commenced while Herman was still alive and his executrix has been substituted in his place. A written agreement to submit disputes to arbitration is itself valid, enforceable, and irrevocable except upon such grounds as would justify a revocation of any contract (§ 1281), and is specifically enforceable (5 Cal.Jur.2d, Rev., Arbitration and Award, § 7, p. 74). "An award that has not been confirmed or vacated has the same force and effect as a contract in writing between the parties to the arbitration." (§ 1287.6.) In *Walter* v. *National Indem. Co., supra,* it was held that an unconfirmed award becomes an asset of the awardee's estate. By a parity of reasoning, if the award is against the one who dies pending its confirmation, it should remain a liability, we think, against that party's estate. (Cf. *Doyle* v. *Giuliucci* (1965) 62 Cal.2d 606, 609 [43 Cal.Rptr. 697, 401 P.2d 1], also as to the nature of an unconfirmed award.)

 B. *Frieda is estopped from denying that she was a party to the arbitration:* Whether a particular person is a party to an arbitration is a matter for the court rather than the arbitrator to determine. (*Unimart* v. *Superior Court* (1969) 1 Cal.App.3d 1039, 1045 [82 Cal.Rptr. 249]; *Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543, 547 [11 L.Ed.2d 898, 903, 84 S.Ct. 909, 912-913].)

Section 1280, subdivision (e), provides: " 'Party to the arbitration' means a party to the agreement: (1) Who seeks to arbitrate a controversy pursuant to the agreement; (2) Against whom such arbitration is sought pursuant to the agreement; or (3) Who is made a party to such arbitration by order of the neutral arbitrator upon such party's application, upon the application of any other party to the arbitration or upon the neutral arbitrator's own determination." In *Unimart* v. *Superior Court, supra,* at page 1049, the court held: "It is our conclusion that section 1280, subdivision (e) (3) does not give the arbitrator or a party to the arbitration the power to join a stranger." However, one who voluntarily joins an arbitration becomes a party to it. (*Kustom Kraft Homes* v. *Leivenstein* (1971) 14 Cal.App.3d 805, 809 [92 Cal.Rptr. 650]; 6 C.J.S., Arbitration and Award, § 9, p. 157.) One also may lose his right to a determination of whether he is a party to an arbitration by waiver or estoppel. (See 5 Am.Jur.2d, Arbitration and Award, § 22, p. 537.) One submitting a counterclaim without resorting to an extraordinary remedy, available to him, may not claim after an adverse ruling in arbitration that the counterclaim was not an issue in the arbitration proceedings. (*Lesser Towers, Inc.*

v. *Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 698-699 [77 Cal.Rptr. 100].) The basic rationale is that "[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act." (*Ficek* v. *Southern Pacific Company* (9th Cir. 1964) 338 F.2d 655, 657, cert. den. 380 U.S. 988 [14 L.Ed.2d 280, 85 S.Ct. 1362].) ▮ "Ordinarily a party cannot accept the benefits of a judgment, in whole or in part, and then attack it by appeal." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 136, p. 4131.) ▮ We think the same principle may be applied to one who would challenge arbitration procedures through which one has benefited.

It is true that Frieda did not voluntarily join the arbitration proceedings and that she contended that she was not a party to the building construction contract signed only by her husband, Herman. If she and her counsel were confident of this contention, she could have obtained a writ of prohibition or a restraining order from the court forbidding the arbitrator from joining her as a party. (Cf. *Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co., supra,* 271 Cal.App.2d 675, 692-693; *Jardine* v. *Superior Court* (1931) 213 Cal. 301, 305 [2 P.2d 756, 79 A.L.R. 291], app. dism. 284 U.S. 592 [76 L.Ed. 510, 52 S.Ct. 197].) She chose not to do so.

The building construction contract stated that it was an agreement between Mr. and Mrs. Herman Seyfarth on one side and Ivar Lovret on the other, although signed only by Herman. Certainly, under this ambiguous document, parol evidence could be received to determine the intent of the parties. (E.g., *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 4 A.L.R.3d 1373].) As noted previously Herman in a sworn statement, attached to a document filed by him and Frieda in propria persona, stated that he was acting as Frieda's agent.

The petition to confirm the award filed January 30, 1967, alleges that Herman and Frieda were husband and wife and that they entered into the written building construction contract attached to the complaint on or about June 25, 1965, with Lovret. The Seyfarths' "answer" to this petition filed April 14, 1967, does not deny this allegation. It denied only the allegations in paragraphs VI and VII alleging that Lovret had tendered a full release of all liens which he claimed against the Seyfarths, but that Seyfarths refuse to pay the amount of the award. The answer then set up an affirmative defense that the provision concerning Lovret's tender of releases in the award meant that he had to tender releases of mechanic's liens from all subcontractors and materialmen, and that upon such tender "the 'SEYFARTHS' are ready, willing and able to pay to CONTRACTOR

through his attorneys . . . the sum of . . . ($6,186.09) upon receiving the proper releases as hereinabove mentioned."

In their *pro se* "Petition to Vacate Award and for Re-hearing" filed by the Seyfarths on September 19, 1967, the Seyfarths did allege that Frieda was made a party to the arbitration over her protest and without her consent and that Herman was not the owner of the property on which the construction was performed. However, in paragraph II, they also alleged: "On or about June 25, 1965, *petitioners* entered into a written agreement entitled, 'Building Construction Contract,' with IVAR LOVRET, which agreement included in it the provision to submit any disputes thereunder to arbitration, controversy or claim by arbitration, in accordance with the rules of the Arbitration Association; copy of said Building Construction Contract is attached hereto marked, 'Exhibit A', and incorporated by reference." (This copy had only Lovret's signature on it.) (Italics added.)

Thus, by these pleadings, one filed through counsel and one in propria persona, Frieda, as well as Herman, admits that both of them entered into the written agreement with Lovret and that the agreement contained a provision for arbitration of disputes arising out of the contract transaction.

Frieda makes much of the fact that lot 16 (only one of the two lots, 16 and 17 of Tract No. 13731 M.B. 314-6-7 County of Los Angeles, written in the construction contract) was her separate property. But nowhere is there one word in the record about her posting a notice of nonresponsibility incumbent upon an owner of property after having knowledge of a work of improvement taking place on her land as required by section 1183.1. Absent a compliance with the notice requirements of section 1183.1, the section provides every building, improvement, or work performed or materials furnished "shall be held to have been constructed, performed or furnished at the instance of such owner or person having or claiming any estate therein, and such interest owned or claimed shall be subject to any lien filed in accordance with the provisions of this chapter. . . ." ■ If a husband contracts for the construction of a building on land belonging to the wife alone and the wife has knowledge of the contract and of the erection of the house upon her land and consents to such construction, her land is subject to mechanic's liens. (*Walsh* v. *McMenomy* (1887) 74 Cal. 356 [16 P. 17].) Her land being subject to having liens filed against it, Frieda was not a stranger with no interest in the arbitration proceedings. In fact, she and Herman filed a counterclaim in the arbitration proceedings, which was denied.

■ Finally, by virtue of the arbitration proceedings and the judicial proceedings to correct and confirm the award, Frieda was able to obtain

releases or waivers of lien or tenders thereof for a sufficient period of time to keep them from encumbering her property (lot 16). Acceptance of this benefit through these various proceedings is another factor weighing against permitting Frieda to deny at this late date that she was a party to the arbitration proceedings and to claim that she is not bound by the award.

Taking all of the foregoing factors into consideration, as well as the general principle that one cannot blow hot and cold at various stages of a given proceeding, we hold that Frieda is estopped from claiming that she was not a party to the arbitration.

### V.

The requests of both sides for an award of attorney's fees by this court are denied without prejudice. The matter can be best treated in the trial court in view of the remand of the case for further proceedings.

### VI.

The order of November 25, 1969, in 2d Civ. No. 37636 is reversed.

The order of August 14, 1970, in 2d Civ. No. 37937 is affirmed insofar as it: (1) recalls and quashes the writ of execution; (2) vacates the levy of execution upon the approximate sum of $1,117.64 presently in custody of the Marshal of Los Angeles County; (3) vacates the minute order of November 25, 1969; and (4) vacates and sets aside the judgment confirming the award dated October 27, 1967, and entered October 31, 1967. It is reversed insofar as it exonerates Frieda Seyfarth from any responsibility and directs the matter of Herman Seyfarth to be returned to arbitration for further proceedings. The cause is remanded to the superior court with directions to take further appropriate proceedings consistent with the views set forth in the foregoing opinion.

Requests for award of attorney's fees from both sides are denied without prejudice.

Each side shall bear its own respective costs in each appeal.

Kaus, P. J., and Stephens, J., concurred.