Filed 8/4/14  H.C. v. Super. Ct. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| H.C., <br><br>     Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF MONTEREY COUNTY, <br><br>     Petitioner, <br><br> MONTEREY COUNTY DEPARTMENT OF SOCIAL & EMPLOYMENT SERVICES, <br><br>     Real Party in Interest. | H041016 <br> (Monterey County <br> Super. Ct. No. J46808) |

## I.     INTRODUCTION

H.C. is the father of M.B., the child at issue in this juvenile dependency case. The father has filed a petition for extraordinary writ seeking review of the juvenile court's order selecting adoption as the permanent plan at a Welfare and Institutions Code section 366.26[1] permanency planning hearing.  (See § 366.28, subd. (b)(1).)

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

In his writ petition, the father contends this court should vacate the order terminating his parental rights and designating adoption as the permanent plan. For reasons that we will explain, we will deny the writ petition.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     *Section 300 Petition*

On October 16, 2012, the Monterey County Department of Social and Employment Services (the Department) filed a petition under section 300, subdivisions (b) [failure to protect] and (g) [no provision for support], alleging that the child came within the jurisdiction of the juvenile court. The child was eight months old at the time.[2] The petition alleged the following facts.

On August 8, 2012, the Department had received an initial referral based on the fact that the child was underweight: he weighed only 10 pounds at age six months. The mother was taking psychotropic medication for posttraumatic stress disorder and anxiety. The mother reported that the father was hitting her and had been convicted of committing battery against her three years earlier. The father denied committing domestic violence and accused the mother of using cocaine.

On August 29, 2012, the Department received another referral. The mother admitted methamphetamine use and that she had been under the influence of prescription drugs while caring for the child. The mother admitted being on parole for transporting drugs. She reiterated that the father had been violent with her. She accused the father of using methamphetamine and cocaine. The mother agreed to voluntary family maintenance services including an alcohol and drug assessment, counseling services for

_____

[2] The mother had two other children, both of whom had different fathers. Those children were living with their paternal relatives in Texas.

2

domestic violence, and drug testing. The father was in custody due to a recent arrest for traffic warrants.

On October 8, 2012, after the father was released from custody, the parents had an argument while driving in a car with the child, who was in an unsecured car seat. The father drove the vehicle erratically, at speeds of up to 85 miles per hour. The father punched the mother in the face several times. The car was pulled over by the police, and the father was arrested. At the time the petition was filed, the father remained in county jail.

On October 12, 2012, the mother was agitated and incoherent while at a medical clinic. She had not fed the child and said she needed help caring for him. A social worker took the child into protective custody.

### B.    Detention Hearing

At the detention hearing held on October 17, 2012, the juvenile court found that continuance in the parental home would be contrary to the child's welfare and that removal from the parents' custody was necessary to protect the child's physical or emotional health. The court therefore determined that a prima facie showing had been made that the child came within section 300, and it ordered the child detained.

### C.    Jurisdiction/Disposition Report

The Department's jurisdiction/disposition report, filed on November 21, 2012, recommended reunification services be provided to both parents. However, the father had charges pending from the October 8, 2012 incident and remained in county jail. Because of the pending charges and the fact that he had a prior felony conviction, it was doubtful that the father would be released in time "to participate in reunification services."

The mother had visited with the child, who was in a concurrent home (a home where the foster parents are the potential adoptive parents). Two visits were terminated early because the mother was distracted and upset. The mother was delusional during

3

one visit. During three subsequent visits, the mother "began to normalize." The father had not visited with the child due to his incarceration.

The mother had been provided with a psychological evaluation. Both parents had been referred to alcohol and drug assessments and for a Family Mental Health Assessment. The mother's case plan included domestic violence counseling, cooperation with the Victim Witness program, participation in a second psychological evaluation, if recommended, and participation in "Parent[]s as Teacher[]s." The father's case plan included demonstrating the ability to maintain non-violent relationships, compliance with court orders in his criminal case, and completion of alcohol and drug workbooks.

### D. Jurisdiction/Disposition Hearing: Father

A jurisdiction/disposition hearing was held on November 28, 2012. The father submitted on the basis of the Department's report. The juvenile court adopted the findings and orders contained in the Department's jurisdiction/disposition report as to the father: the court found the allegations of the section 300 petition true, declared the child a dependent of the court, ordered the child's out-of-home placement to continue, and ordered reunification services. The court continued the matter for a contested hearing as to the mother and ordered another psychological evaluation of the mother.

### E. Section 388 Petition

On December 21, 2012, the social worker filed a section 388 petition, requesting the court suspend the mother's visitation. The social worker alleged that the mother's visits had become detrimental to the child. The mother's behavior had been "concerning and erratic." The mother had subjected the child to "very intrusive body searches" during the visits and demonstrated "little to no parenting skills."

The social worker reported the results of the mother's two psychological evaluations. The first evaluator concluded that the mother suffered from a mental disorder that rendered her incapable of utilizing reunification services. The second evaluator concluded that the mother's behavior during visits was detrimental to the child

4

because he was becoming "habituated" to the invasive body searches. The mother continued to exhibit delusional thoughts about the child's appearance and safety.

On January 7, 2013, the juvenile court granted the social worker's section 388 petition, ordering the mother's visitation suspended.

### F. Jurisdiction/Disposition Hearing: Mother

On January 28, 2013, the mother withdrew her request for a contested jurisdiction/disposition hearing and submitted on the recommendations in the Department's jurisdiction/disposition report. The juvenile court adopted the findings and orders originally recommended by the Department, with the exception of the visitation order. The juvenile court ordered that the mother not have visitation with the child until she showed improvement in her parenting skills.

### G. Six-Month Review: Status Review Reports and Trial Briefs

On April 29, 2013, the Department filed a status review report for the six-month review hearing, recommending that reunification services be terminated as to both parents and a selection and implementation hearing be set.

The mother had recently been arrested on misdemeanor charges but was not in custody. The father had been sentenced to a four-year prison term for the charges stemming from the October 8, 2012 incident. The child had not visited with the father due to the father's incarceration. The child remained in his concurrent foster home.

On May 21, 2013, the Department filed a supplemental status review report. The supplemental report contained the clerk's minutes from the father's February 19, 2013 sentencing hearing. The minutes reflected the four-year prison term and also that the court had issued a 10-year post-trial protective order protecting both the mother and the child. The father was to have no contact with either the mother or the child, except to the extent permitted by a family, juvenile, or probate court order issued after the February 19, 2013 order was filed.

5

On June 17, 2013, the Department filed a trial brief in which it argued that reasonable services had been provided to both parents. The Department noted that the father had been incarcerated throughout the proceedings and that he had been remanded to North Kern State Prison in Delano in February of 2013. The father had been provided with workbooks to address his parenting skills and substance abuse. The father had completed the workbooks but he had "not addressed the situation that led to the dependency: domestic violence."

The father submitted a trial brief in which he argued that "despite his sentence, he should be given an opportunity to reunify with his child." The mother submitted a trial brief in which she asked for six more months of services.

### H.    Six-Month Review Hearing:  Father

On June 26, 2013, a contested six-month review hearing was held as to the father only. As to the mother, the matter was continued because one of her witnesses was unavailable.

The father informed the court that he had 10 months left to serve in prison. He requested that services be extended until after he was released. He expressed frustration that he did not have "any type of services" to do while he was incarcerated. The Department opposed the father's request for an extension of services.

The juvenile court found that the return of the child to the father would create a substantial risk of detriment and that there was clear and convincing evidence that the father had failed to make substantive progress in his court-ordered treatment program. The court terminated reunification services as to the father and set the matter for a selection and implementation hearing.

The father did not file a writ petition to challenge the termination of his reunification services and the setting of the selection and implementation hearing. (See § 366.26, subd. (l); *In re Janee J.* (1999) 74 Cal.App.4th 198, 206 (*Janee J.*) [petition for

6

writ review is "the exclusively prescribed vehicle for appellate review of an order setting a .26 hearing"].)

## I. Six-Month Review Hearing: Mother

On July 10, 2013, a contested six-month review hearing was held as to the mother. The mother testified that she was participating in a drug treatment program and attending 12-step meetings. She had a sponsor and a "mentor mom." She had attended one parenting class and was about to start another, and she was attending therapy. The mother requested another six months of services.

Referring to the psychological evaluations, the juvenile court found clear and convincing evidence that the mother was suffering from a mental disability that rendered her incapable of utilizing reunification services and that she was unlikely to become capable of adequately caring for the child and having the child returned to her "within the time allowed by law." The court adopted the findings and orders in the Department's six-month review report, terminated reunification services as to the mother, and set the matter for a selection and implementation hearing.

## J. Section 366.26 Hearings

The Department filed a section 366.26 hearing report on November 5, 2013. The Department recommended termination of parental rights and adoption as the permanent plan. The child remained in his concurrent home, where the prospective adoptive parents had established a parent/child bond with him.

At a hearing held on December 11, 2013, the father submitted the matter on the Department's report. The juvenile court adopted the findings and orders recommended by the Department as to the father, thus terminating his parental rights. The court continued the matter as to the mother, who had been appointed new counsel.

The father filed a trial brief on March 7, 2014, stating that he was "contesting the termination of parental rights." Father identified three issues: (1) his family had been willing and available to adopt the child; (2) he would be able to successfully reunify with

the child after his release from prison; and (3) he had not been properly advised throughout the case.

On March 11, 2014, the father's attorney filed a conflict of interest statement, and a new attorney was appointed to represent the father.

On March 25, 2014, the juvenile court reinstated the father's parental rights so both parents could have a contested section 366.26 hearing on the same date.

On April 18, 2014, the mother filed a motion to vacate the jurisdictional findings. The mother claimed she had not been properly advised of her constitutional rights or the consequences of submitting the matter based on the social worker's recommendations, and she claimed she had received ineffective assistance of counsel.

The father filed another trial brief on April 22, 2014. He indicated he would be released from prison in June of 2014 and argued that he would be able to successfully reunify with the child if he was given additional time after his release.

On May 5 and 6, 2014, the juvenile court held a hearing on the mother's motion to vacate the jurisdictional findings. At the end of the hearing, the juvenile court ordered the mother and the Department to further brief the issues concerning the mother's motion to vacate and continued the section 366.26 hearing to May 12, 2014.

On May 12, 2014, the father filed a letter, in pro per, stating that he was confused about his status. He asserted that he had written to his new attorney but she had not responded. He explained that he had declined to appear at the May 5, 2014 hearing because he did not want to lose his fire camp program or jeopardize his early release date. He explained, "My goal is to get out as soon as possible to be able to participate in the reunification service if possible . . . ." He asked that the juvenile court continue the matter until after June 10, 2014, his anticipated early release date. The father stated that he had asked his new attorney to make the same request of the court, and that he had instructed her to "appeal any decision that the court might make" that might prevent him from reuniting with the child.

8

Also on May 12, 2014, the juvenile court heard arguments regarding the mother's motion to vacate the jurisdictional findings. After denying the mother's motion, the juvenile court addressed the father's letter. The court found no basis for the father's contention "that he wasn't informed of what was going on." The court denied the father's request to continue the selection and implementation hearing past the father's expected release date.

The juvenile court then proceeded with the contested section 366.26 hearing. The father's attorney acknowledged that the 10-year no contact order had prevented visitation as a part of reunification services. She noted that the father had completed the workbooks that had been the only component of his reunification plan. She argued that the services provided had not been reasonable and that the father's parental rights should not be terminated. She noted that it might be possible for the father to have visitation with the child if the criminal no-contact order was modified.

The juvenile court agreed that the father would need to get the criminal no-contact order modified before he could have contact with the child. With respect to the issue of reasonable services, the court stated that "with a no contact order in place, I don't know what else the Department could have done, other than provide him with the workbooks."

The juvenile court adopted the findings recommended by the Department. The court terminated the parental rights of both the father and the mother. The court selected adoption as the permanent plan for the child. The court set a permanent placement and review hearing for November 18, 2014.

### K.  Writ Proceedings

The mother filed a notice of her intent to file a writ petition on May 16, 2014. Through his appointed counsel, the father filed a notice of his intent to file a writ petition on May 20, 2014.

The father subsequently filed a petition for extraordinary writ, in pro per, indicating he was seeking review of the juvenile court's May 12, 2014 orders. His pro

9

per petition was filed on June 23, 2014. His appointed counsel attempted to file another petition on June 25, 2014, but the petition was untimely. That petition would have raised the issue of whether reasonable services had been offered to the father.

The Department filed a brief in opposition to the father's writ petition on July 8, 2014. In its brief, the Department contends substantial evidence supports the juvenile court's finding that reasonable services were offered to the father.[3]

## III.    DISCUSSION

The father's pro per writ petition states that the juvenile court's order was erroneous because he was not provided with his "legal documents" due to his incarceration. He requests this court vacate the order designating adoption as the permanent plan for the child. He also requests this court vacate the order setting the matter for a section 366.26 hearing, order that reunification services be provided and/or continued, order visitation, return or grant him custody of the child, and terminate dependency.

Although the factual basis for the father's writ petition is not entirely clear, we understand him to be challenging the juvenile court's placement order and the termination of his parental rights. (See Cal. Rules of Court, rule 8.456(a)(1) ["The petition must be liberally construed"].[4]) We also interpret the father's writ petition as

---

[3] The Department does not contend that we should not consider the father's pro per writ petition. (See *In re Barnett* (2003) 31 Cal.4th 466, 469 [as a general rule, "represented parties have no right to present their cases personally alongside counsel"]; see also *People v. Brown* (1986) 179 Cal.App.3d 207, 214-215; *Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 857-858; Cal. Rules of Court, rule 8.454 [trial counsel is responsible for filing writ petition].) With no opposition from the Department, we will exercise our discretion to consider the petition.

[4] The Department does not contend that the father's writ petition is procedurally inadequate because, for instance, it is not accompanied by a memorandum as required by rule 8.456. (See *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 583 (*Glen C.*) ["points and authorities must, at a minimum, adequately inform the court of the issues (continued)

10

asserting that he did not receive the effective assistance of counsel at the section 366.26 hearing. We note that these are the only issues cognizable at this stage of the proceedings. The father may not challenge determinations made prior to the section 366.26 hearing, such as the reasonableness of the reunification services, even though that issue was discussed at the section 366.26 hearing; nor may he challenge counsel's performance at earlier stages in the proceedings. (See *Janee J., supra,* 74 Cal.App.4th at pp. 211-212; *In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1157-1158 (*Meranda P.*).)

The California Supreme Court has stated that "[t]he objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time. [Citations.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 307.)

"When the child is removed from the home, the court first attempts, for a specified period of time, to reunify the family. [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52 (*Celine R.*).) When the child is under three years of age at the time of removal, reunification services are presumptively limited to six months. (§ 361.5, subd. (a)(1)(B).) Reunification services may be extended up to 18 months from the date of removal if the juvenile court finds a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within that extended time period or that reasonable services have not been provided to the parent or guardian. (*Id.,* subd. (a)(3).)

Where reunification efforts have failed, " 'the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan. [Citation.]' " (*Celine R., supra,* 31 Cal.4th at

---

presented, point out the factual support for them in the record, and offer argument and authorities that will assist the court in resolving the contested issues"].) Again, we exercise our discretion to consider the petition on the merits, despite its deficiencies.

11

p. 52.) " 'A section 366.26 hearing . . . is a hearing specifically designed to select and implement a permanent plan for the child.' [Citation.] It is designed to protect children's 'compelling rights . . . to have a placement that is stable, permanent, and that allows the caretaker to make a full emotional commitment to the child.' [Citation.]" (*Id.* at pp. 52-53.)

"The court has four choices at the permanency planning hearing. In order of preference the choices are: (1) terminate parental rights and order that the child be placed for adoption . . . ; (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care. (§ 366.26, subd. (b).) Whenever the court finds 'that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption.' (§ 366.26, subd. (c)(1).)" (*Celine R.*, *supra*, 31 Cal.4th at p. 53.)

" The circumstance that the court has terminated reunification services provides 'a sufficient basis for termination of parental rights unless the court finds a compelling reason for determining that termination would be detrimental to the child due to one or more' of specified circumstances. [Citation.]" (*Celine R., supra,* 31 Cal.4th at p. 53.)

The father has not identified any applicable statutory exception to termination of parental rights in this court, and he did not do so in the juvenile court proceedings. He has not argued, for instance, that the parent-child relationship exception applies (§ 366.26, subd. (c)(1)(B)(i)) or that the sibling relationship exception applies (*id.*, subd. (c)(1)(B)(v)). (See gen., *In re C.B.* (2010) 190 Cal.App.4th 102, 123.) It is a general principle of appellate practice that a judgment or order of a lower court is presumed correct and that error by the lower court must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 355, p. 409.) While this court is not required to examine the record for arguable issues (see *Glen C., supra,* 78 Cal.App.4th at p. 580), we observe there is no substantial evidence that the father "maintained regular visitation and contact with the

child and [that] the child would benefit from continuing the relationship" such that the parent-child relationship exception would apply. (§ 366.26, subd. (c)(1)(B)(i).) Likewise, there is no substantial evidence that the child had "existing close and strong bonds with a sibling" such that termination of parental rights would cause "substantial interference with [the] child's sibling relationship." (*Id.*, subd. (c)(1)(B)(v).) In fact, the Department's section 366.26 report reflects that the child did not "have a relationship with his half-siblings due to the fact that they reside out of state . . . ."

To the extent the father is alleging he received ineffective assistance of counsel, we reiterate that our review of counsel's performance is limited to the section 366.26 hearing. (See *Meranda P., supra,* 56 Cal.App.4th at pp. 1157-1158.) In order to establish a claim of ineffective assistance of counsel, an appellant must show not only that his attorney failed to act in a manner reasonably to be expected of attorneys practicing in the field of dependency law, but that counsel's failures resulted in prejudice. (*In re Arturo A.* (1992) 8 Cal.App.4th 229, 237.) Prejudice is shown if there is a reasonable probability that a result more favorable to the appealing party would have been reached in the absence of error. (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1668.) At the section 366.26 hearing, trial counsel did not argue that any of the exceptions to termination of parental rights applied. However, as discussed above, the record fully supports the trial court's finding that the child was adoptable and its implied determination that none of the statutorily specified circumstances provided a compelling reason for finding that termination of parental rights would be detrimental to the child. (See § 366.26, subd. (c)(1)(B); *Celine R., supra,* 31 Cal.4th at p. 53.) Thus, we find nothing to indicate trial counsel was ineffective at the section 366.26 hearing.

## IV. DISPOSITION

The petition for extraordinary writ is denied.

13

_____
BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____
MÁRQUEZ, J.

_____
GROVER, J.

*H.C. v. Superior Court (DSES)*
**H041016**