Filed 10/21/20  Thompson v. Casas CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| BRENDA THOMPSON et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> JUVENTINO B. CASAS, JR., <br><br> Defendant and Appellant. | B293066, B297590 <br> (Los Angeles County <br> Super. Ct. No. BC675611) |

APPEAL from a judgment and post-judgment order of the Superior Court of Los Angeles County, Rita Miller and Lia Martin, Judges.  Affirmed.

James V. Mellein for Defendant and Appellant.

Thomas & Elliott, Jay J. Elliott; Benedon & Serlin, Judith E. Posner and Kian Tamaddoni for Plaintiffs and Respondents.

These consolidated appeals arise from a garden-variety settlement agreement, stipulation for judgment and judgment against defendant and appellant, attorney Juventino Casas, Jr., by his former clients, plaintiffs and respondents Brenda Thompson and Daniel Pompa III,[1] a mother and son deprived of an inheritance due to their attorney's alleged malpractice.

The litigants participated in a mediation conference before a retired judge which did not result immediately in a formal settlement agreement but did yield the written stipulation for settlement (Stipulated Settlement) signed by the litigants memorializing the terms of the settlement. The parties specifically agreed the Stipulated Settlement was a "settlement document . . . intended by [them] to be binding and enforceable in . . . state court by motion pursuant to [Code of Civil Procedure section] 664.6."[2] The Stipulated Settlement required Casas to pay plaintiffs a total of $250,000 in settlement in specific installments. Among other things, the Stipulated Settlement required Casas to "execute a stipulated judgment in the amount of $433,275" to be filed in the event he "default[ed] on the payment terms of [the Stipulated Settlement]."

---

[1] For clarity, we refer to Thompson and Pompa individually by their surnames and, collectively, as plaintiffs.

[2] Statutory references are to the Code of Civil Procedure.

After Casas refused to execute the formal settlement documents contemplated by the Stipulated Settlement or to make agreed upon payments, plaintiffs filed a section 664.6 motion to enforce the parties' settlement agreement. That motion was granted, and Casas filed a timely appeal from the subsequent judgment entered against him. While that appeal was pending, Casas filed a motion with the trial court to vacate the judgment. The court denied the motion for lack of jurisdiction, in light of the pending appeal. Casas filed a second appeal from the order denying his motion to vacate. Casas maintains the parties lacked a binding settlement agreement and the trial court erred in entering judgment against him and in its subsequent refusal to vacate that judgment. For reasons explained below, we find no merit in Casas's arguments. Accordingly, we affirm the judgment and the order denying the motion to vacate.

## FACTUAL AND PROCEDURAL BACKGROUND

*Elsie Gomez's Estate Plan*

Elsie Gomez was Thompson's mother and Pompa's grandmother. In March 2010, Gomez retained Casas to prepare her estate planning documents, including a will and an irrevocable trust. Among Gomez's assets were two parcels of real property. One was her family home on Avenida Cesar Chavez in Monterey Park (Cesar Chavez Property), and the other was located on Houston Street in Los Angeles (Houston Property). Gomez wished to bequeath the Cesar Chavez Property solely

3

to Thompson and Pompa, and the Houston Street Property to be shared equally among her five children and Pompa.

Casas prepared several documents, including "Last Will and Testament of Elsie Gomez" (Will), and an "Irrevocable Trust Agreement of Elsie Gomez" (Trust), which Gomez executed on May 1, 2010. That same day, Gomez executed grant deeds transferring title to the Cesar Chavez and Houston Street Properties from herself to the Trust, the six beneficiaries of which were her five children and Pompa. Gomez passed away in August 2015.

After Gomez's death, Thompson contacted Casas about her mother's estate plan, and learned Gomez had bequeathed the Cesar Chavez Property to her and her son, and that Thompson was named executor of Gomez's Will and successor trustee for the Trust. Thereafter, Thompson retained Casas, who represented and advised her as to her rights and obligations in connection with administration of Gomez's estate. In October 2015, at Casas's direction, Thompson executed a grant deed transferring the Cesar Chavez Property from herself, as successor trustee of the Trust, to herself and Pompa as tenants in common.

*Gomez's Will and Trust Do Not Affect Her Intention to Bequeath the Cesar Chavez Property to Plaintiffs*

In December 2015, Robert Gomez, one of Elsie Gomez's five children,[3] filed a petition in probate court to determine the validity of his mother's Trust and Will and sought to impose a constructive trust. Robert contested transfer of the Cesar Chavez Property to Thompson and Pompa. Thompson retained Casas to represent her and Pompa in defense of Robert's petition, and Casas filed a response to Robert's petition, conducted discovery and made court appearances.

The court referred that matter to mediation during which Thompson and Pompa—still represented by Casas—were surprised to learn that, due to errors made by Casas, Gomez's estate documents did not effect her intent to bequeath the Cesar Chavez Property to them. In the Will Gomez left the Cesar Chavez Property to Thompson and Pompa alone. However, Casas incorrectly prepared the Trust documents and, as a result, upon Gomez's death both the Cesar Chavez and Houston Street Properties irrevocably became assets of the Trust to be distributed equally among its six named beneficiaries.

In February 2017, Robert Gomez and Thompson reached a settlement by which Robert agreed to dismiss his petition in exchange for Thompson's agreement to transfer title to the Cesar Chavez

---

[3]   Thompson and her brother Robert Gomez are the only two of Elsie's children whose names are relevant here.

Property back to the Trust. Following this settlement, Casas abandoned his representation of Thompson and Pompa, refused to communicate with them, and provided no further legal assistance.

In March 2017, Thompson retained new counsel to represent her as trustee of the Trust. In April 2017, the Cesar Chavez Property was transferred into the Trust. As trustee, Thompson continued to administer and distribute Trust assets according to its terms. She sold the Cesar Chavez Property and began distributing the net proceeds from that sale to Trust's beneficiaries. In the end, rather than inheriting the Cesar Chavez Property in its entirety as Gomez intended, Thompson and Pompa each received one-sixth of the net proceeds from the sale of that house.

*Plaintiffs Sue for Malpractice and the Parties Mediate and Settle the Action*

In March 2018, represented by attorney Jay Elliott, Thompson and Pompa filed the operative complaint in this action against Casas and his wholly owned law firm, alleging claims for legal malpractice in connection with his drafting of Gomez's estate planning documents, and subsequent representation of Thompson as trustee in defense of the petition filed by her brother. The suit also alleged Casas engaged in concealment and breached his fiduciary duty by failing to inform plaintiffs the estate plan documents he prepared for Gomez resulted in an irrevocable transfer of the Cesar Chavez Property to the Trust.

6

Sometime before April 18, 2018, Casas filed what he referred to as a "Petition to Probate Lost Will" (L.A.S.C. case No. 18STPB00747), "*[In] re Estate of Elsie Gomez*."

On April 18, 2018, Thompson, Pompa and Casas participated in a mediation before retired judge Patricia Schnegg, at Judicate West. At that mediation the litigants executed a written "Stipulation for Settlement" (Stipulated Settlement) to settle this action "according to the terms memorialized [in that agreement]." The Stipulated Settlement explicitly states it is a "settlement document . . . intended by the parties to be binding and enforceable . . . by motion pursuant to . . . § 664.6." The Stipulated Settlement confirms the parties' agreement to settle this matter on the following terms:

> "Plaintiffs agree to accept and defendants[4] agree to pay the sum of $250,000 as a full and complete settlement of their claims against defendant[]. This settlement is being entered into based upon the representation that the [Cesar Chavez Property] was sold and that distributions of approximately $87,000 were made to each of the 6 beneficiaries under the Trust. The balance from the sale of that property shall be distributed once all taxes and obligations relating to that sale have been satisfied.

---

[4] Casas's wholly owned law firm was a named defendant in the action, but Casas is the only party to the Stipulated Settlement and the only appellant. Thus, our references to defendants are solely to Casas.

"The settlement sum of $250,000 shall be paid as follows:  1) $25,000 concurrent with the signing of the settlement documents, including the Stipulated Judgment and the Promissory Note and Deed of Trust; 2) an additional $55,000 shall be paid on or before May 31, 2018; and the balance of $170,000 shall be payable at the rate of $6,000 a month commencing on July 1, 2018 and continue on the 1st day of each month thereafter until the entire balance is paid in full.  In addition, defendant[] shall execute a stipulated judgment in the amount of $433,275[5] which judgment shall not be filed until defendant[] default[s] on the payment terms of this [Stipulated Settlement].  Finally, this obligation shall be secured by a promissory note and deed of trust on defendant's real property located at 2013 West Cleveland Ave., Montebello, CA . . . .  In the event there is insufficient equity in this property then another property of defendant's shall be used in place of this property.  Defendant's spouse must execute both the promissory note and deed of trust.  Other than what is set forth above each

---

[5]    The Stipulated Settlement does not identify the genesis for the unusually specific sum of $433,275 in the Stipulated Judgment to be filed in the event of Casas's default.  According to a declaration filed by Elliott in support of plaintiffs' section 664.6 motion, this sum "represents the undisputed amount of damages [Thompson and Pompa] suffered due to the malpractice of . . . Casas in drafting the trust for Elsie Gomez which did not allow [Thompson and Pompa] to inherit the [Cesar Chavez Property] when [Gomez] died."  Casas did not dispute this representation.

8

party shall bear their own costs and fees. In the event defendant dies prior to making all of the payments due under this agreement, plaintiffs agree to forego foreclosure for 90 days to allow defendant's spouse to pay off the balance due under the settlement agreement.

"Defendant[] agree[s] to dismiss his petition with prejudice filed in the LASC re Estate of Elsie Gomez, case number 18STPB00747.

"Counsel for plaintiffs shall prepare the written settlement documents and provide them to the defendant[] on or before April 27, 2018."

The Stipulated Settlement contains signature lines for and was signed by Thompson, Pompa and Casas.

*The Litigants Begin—Then Casas Ceases—to Perform Under the Stipulated Agreement*

According to Elliott's declaration in support of the section 664.6 motion, on April 20, 2018 (two days after the mediation), Casas filed and served on plaintiffs a "Request that he filed with the Los Angeles Superior Court to dismiss with prejudice the probate petition that he filed in the Los Angeles Superior Court [action] regarding the Estate of Elsie Gomez, case number 18STPB00747].[6]

---

[6] Casas claimed to have asked that his petition be "denied with prejudice," but it is unclear when or whether his petition was dismissed. In a

9

Thompson and Pompa also began to fulfill their obligations under the Stipulated Settlement. On April 25, 2018, Elliott sent Casas an email stating:

"Pursuant to the settlement agreement reached in this matter, [Elliott had] prepared and attached for [Casas's] review and approval the following documents:

"1. Settlement Agreement and Mutual Release

"2. Secured Promissory Note

"3. Deed of Trust

"4. Written Guaranty [to be signed] by Elizabeth Casas [Casas's wife]

"5. Stipulation For Entry of Judgment and Judgment."

Elliott requested that Casas review the documents and contact him with any questions about or proposed changes.

By a May 11, 2018 letter Casas informed Elliott that his wife refused to sign a promissory note and deed of trust. Casas said he "regret[ted] being unable to convince [his] wife to cooperate" but, in light of her refusal to do so, Casas "[could not] sign the Stipulated Judgment." He requested an extension of time to respond to the complaint.

_____

May 25, 2018 letter to Elliott, Casas stated that, at a hearing on May 1, 2018, the court had continued a hearing regarding Casas's petition matter to July 31, 2018, for reasons not relevant here.

10

Elliott responded a week later and informed Casas that, because his wife refused to sign the promissory note and deed of trust, plaintiffs had chosen to forgo that security, and had "removed the promissory note and deed of trust from the settlement documents." Elliott attached for Casas's review and signature only a revised Settlement/Release Agreement, and Stipulation for Entry of Judgment. Elliott asked Casas to execute and return the documents "as soon as possible, along with the payments required by the April 18, 2018 settlement agreement." The modified settlement documents eliminated a signature line for Casas's spouse as well as the requirement that Casas provide real property as security for the settlement.

On May 25, 2018, Casas responded to Elliott informing him again he had decided he could not sign the settlement documents or Stipulated Judgment because his wife, who did not participate in the mediation, was "a necessary party to the [Settlement] Agreement [which] required her to sign a Promissory Note and Deed of Trust." However, Casas's wife was advised by an unidentified probate attorney not to sign those documents. Casas opined that his wife's execution of the promissory note and deed of trust was an "essential condition" of the settlement agreement because he alone could not encumber community property. Casas observed that it was plaintiffs who had insisted on this "essential" condition to secure the settlement, and they were not now free unilaterally to change their mind and "say [they] no longer require[d] security for payment." Casas also stated that "[p]ursuant to the Agreement" he had requested the trial court deny his petition with

11

prejudice and intended to continue to do so, because Thompson's probate petition had priority.

Elliott responded on June 6, 2018, informing Casas that his wife's "execution of a promissory note and deed of trust [was] not a condition precedent to the settlement payments that [Casas] agreed to make when [he] signed the written [Stipulated Settlement]," and the fact that Casas's wife would not sign those documents did "not abrogate or excuse [Casas's] obligation to make the required settlement payments." Elliott informed Casas that, "if [plaintiffs did] not receive the initial settlement payments . . . due pursuant to the [Stipulated Settlement] by . . . June 8, 2018, along with an executed stipulation for entry of judgment, [plaintiffs] would be forced to file" a section 664.6 motion "to enforce the settlement."

Casas responded on June 11, 2018, informing Elliot he had no intention to make either the $25,000 or $55,000 payments. He enclosed a redacted copy of the April 18, 2018 Stipulated Settlement in which he acknowledged his obligation to pay $80,000 to plaintiffs, but eliminated his duty to pay the entire $250,000 and to provide a promissory note and deed of trust as security. Casas "welcome[d]" plaintiffs to use his redacted document in conjunction with their section 664.6 motion. However, Casas opined that plaintiffs' motion was unlikely to prevail because the requirement for a promissory note and deed of trust executed by both Casas and his wife was an essential condition of the Stipulation.

12

*Plaintiffs Successfully Move to Enforce the Judgment*

On June 14, 2018, Thompson and Pompa filed an ex parte application to schedule a hearing on their section 664.6 motion to enforce the settlement. (§ 664.6.) At a hearing on that application (attended by Casas and Elliott), the trial court denied plaintiffs' ex parte relief. Instead, the court directed plaintiffs to submit a proposed judgment accompanied by a supporting declaration, which the court would "hold . . . for 15 days for any objections from" Casas.

On June 22, 2018, plaintiffs lodged a request seeking entry of the proposed stipulated judgment of $433,275 against Casas, pursuant to the terms of the Stipulated Settlement. Casas opposed the motion on the ground that no judgment could be entered against him because his wife's execution of a promissory note and deed of trust was a necessary precondition to the parties' settlement, and that condition had not been and could not be satisfied. Accordingly, Casas claimed none of his payment obligations had become due and he was not in default. On August 3, 2018, the trial court entered judgment of $433,275 against Casas, based on the parties' April 18, 2018 Stipulated Settlement. On October 4, 2018, Casas filed a timely notice of appeal from that judgment.

*Casas Moves to Vacate the Judgment While His Appeal is Pending*

On December 31, 2018, after initiating the instant appeal, Casas moved to vacate the judgment. (§ 473, subd. (d).) On March 6, 2019, the trial court denied the motion, concluding it lacked jurisdiction to

13

consider the motion in light of the pending appeal because the judgment was "not void on its face." On May 3, 2019, Casas filed an appeal from the order denying his motion to vacate.[7]

## DISCUSSION

*The Trial Court Did Not Err in Entering the Stipulated Judgment After Casas's Default as to the Settlement Agreement*

Casas contends the trial court erroneously entered judgment against him under section 664.6, based on the written April 18, 2018 Stipulated Settlement. He maintains that agreement was not valid because his wife, who was a necessary party to any settlement agreement, never signed such an agreement. He is mistaken.

A. *Governing Legal Principles and the Standard of Review*

Section 664.6 provides a summary procedure for entry of judgment specifically enforcing a settlement agreement without the need for a new lawsuit. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 (*Assemi*); *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 (*Weddington*).) A trial court may grant a motion requesting entry of judgment premised on a settlement agreement in pending litigation if the litigants "stipulate, in a writing signed by the parties

---

[7] We have consolidated the appeals.

14

outside the presence of the court . . . for settlement of the case, or part thereof, . . . pursuant to the terms of the settlement." (§ 664.6.)

It has long been the rule that the court may proceed under section 664.6 "even when issues relating to the binding nature or terms of the settlement are in dispute, because, in ruling upon the motion, the trial court is empowered to resolve these disputed issues and ultimately determine whether the parties reached a binding mutual accord as to the material terms." (*Assemi, supra*, 7 Cal.4th at p. 905.) In making its factual determinations on a section 664.6 motion, the trial court may consider oral evidence or declarations of the parties and their counsel. (*Id.* at p. 911; *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182 (*Hines*).)

In ruling on a section 664.6 motion, the trial court has authority to interpret both the express and implied terms of a settlement agreement. (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889; *Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 566.) "The power of the trial court under Code of Civil Procedure section 664.6, however, is extremely limited. 'Although a judge hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment [citations], nothing in section 664.6 authorizes a judge to *create* the material terms of a settlement, as opposed to deciding what terms *the parties themselves* have previously agreed upon.' [Citation.] . . . [¶] A settlement agreement is simply a contract, . . . [and] [t]he court is powerless to impose on the parties more restrictive or less restrictive or different terms than those contained in

15

their settlement agreement." (*Hernandez v. Board of Education* (2004) 126 Cal.App.4th 1161, 1176; see *Terry v. Conlan* (2005) 131 Cal.App.4th 1445, 1459 [court erred in granting section 664.6 motion where record demonstrated no meeting of minds concerning material terms of settlement].) Before judgment can be entered under section 664.6, two key prerequisites must be satisfied. (*Weddington, supra,* 60 Cal.App.4th at p. 797.) "First, there must be contract formation. The litigants must first agree to the material terms of a settlement contract before a judgment can be entered 'pursuant to the terms of the settlement.' If no meeting of the minds has occurred on the material terms of a contract, basic contract law provides that no contract formation has occurred. If no contract formation has occurred, there is no settlement agreement to enforce." (*Ibid.*) "Second, there must be a 'writing signed by the parties' that contains the material terms." (*Ibid.*)

"The trial court's factual findings on a motion to enforce a settlement pursuant to section 664.6 'are subject to limited appellate review and will not be disturbed if supported by substantial evidence.'" (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360; accord, *Hines, supra,* 167 Cal.App.4th at p. 1182.) We review the trial court's legal conclusions de novo. (*Weddington, supra*, 60 Cal.App.4th at p. 815.) In determining whether substantial evidence exists, our review "begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874, italics omitted.)

16

B. *The Absence of Mrs. Casas's Signature Does Not Impact the Enforceability of the Parties' Settlement*

Casas contends the trial court erred in granting plaintiffs' motion for entry of judgment because his wife—a necessary party to the settlement agreement—did not sign that agreement. Casas misreads the statute. That Casas's wife never signed the settlement agreement is of no consequence. She was not a party to this action. Plaintiffs' motion for entry of judgment did not seek to enforce the settlement against Mrs. Casas, and her signature was not required. (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 305 [section 664.6 only "require[s] the signatures of the parties seeking to enforce the agreement under section 664.6 and against whom the agreement is sought to be enforced"].) The statute does not refer to "parties to the settlement agreement;" it refers to "parties to [the] pending litigation." (§ 664.6.) Here, only Casas and plaintiffs were parties to the pending litigation and the Stipulated Settlement, signed by each party to the pending litigation, met the requirements for entry of judgment under section 664.6.

C. *The Parties' Written Agreement Containing Material Settlement Terms Demonstrates Their Intent to be Bound*

As noted above, the Stipulated Settlement begins with the following words: "*This settlement document is intended by the parties to be binding and enforceable in court . . .* by motion pursuant to C.C.P. § 664.6 and Evidence Code § 1123." (Italics added.) The plain meaning

17

of this language is that the litigants intended to be bound by the terms of the Stipulated Settlement reached during mediation. That Stipulation contains no language, nor has Casas presented any extrinsic evidence indicating, that the Stipulated Settlement was not intended to embody a binding and enforceable settlement agreement.

D. *Casas Failed to Perform His Obligations Under the Settlement Agreement*

Casas is correct that the Stipulated Settlement authorizes a motion for enforcement only upon a party's failure to comply with the terms of the Stipulated Settlement. To obtain a judgment under section 664.6, Thompson and Pompa had the burden to prove a breach occurred. In his declaration in support of plaintiffs' motion, Elliott presented evidence that Casas breached the agreement by failing to pay the first two payments totaling $80,000 of the total $250,000 owed. The court *implicitly* found Casas breached the agreement when it entered the stipulated judgment the parties explicitly had agreed would only be triggered and eligible for entry upon Casas's default.

The requirements of section 664.6 were satisfied. The trial court did not create material terms of the parties' settlement. It ordered only that the settlement be enforced pursuant to terms explicitly memorialized in the executed Stipulated Settlement.

18

### E. *Casas's Arguments Lack Merit*

### 1. *It Was Not Necessary for Mrs. Casas to Sign a Promissory Note and Deed of Trust to Make the Settlement Agreement Binding*

Casas's wrongly contends that the terms of the Stipulation required his wife to become a co-obligor for the entire settlement amount.

The Stipulated Settlement requires that Casas secure his settlement payments by providing a jointly executed promissory note and deed of trust on real property co-owned with his wife. Nevertheless, Mrs. Casas's signature on final settlement documents anticipated by the Stipulated Settlement was not necessary to bind Casas to that agreement. Casas conflates the notion of a necessary party to a settlement agreement with the provision of additional security in the form of a promissory note and deed of trust signed by him and his wife. However, that security—which benefitted only plaintiffs—was merely part of the consideration Casas agreed to provide in exchange for plaintiffs' agreement to end their lawsuit.

The authorities on which Casas relies do not support his contention. In *Sully-Miller Contracting Co. v. Gledson/Cashman Construction, Inc.* (2002) 103 Cal.App.4th 30, 37, section 664.6 was found inapplicable because the *defendants* failed to execute a settlement agreement *they* sought to enforce. Here, *all parties* to the litigation signed the Stipulated Settlement. Further, the court in *Anthony Macaroni Co. v. Nunziato* (1935) 5 Cal.App.2d 588 (*Anthony Macaroni*), relied on the rule that, when "an instrument has been executed by only

19

a portion of the parties *between whom it purports to be made* it cannot be enforced against those who have executed it." (*Id.* at p. 590, italics added.)

Again, the Stipulated Settlement does not purport to be made between anyone other than plaintiffs, on one hand, and Casas on the other. Indeed, the Stipulated Settlement explicitly states that *the parties* agreed to finally resolve the litigation: "It is hereby stipulated by and between *the parties . . .* that the above-referenced case *has been settled.*" (Italics added.) The reference to Casas's spouse in the Stipulated Settlement appears only as an "addition[al]" requirement that Casas's wife execute certain documents. Casas stood to gain nothing if his wife agreed to encumber community property. Indeed, Casas acknowledges the provision requiring a promissory note and deed of trust was intended solely to benefit plaintiffs, who "required the execution of the Promissory Note and Deed of Trust" because they "*wanted security for payment . . .* [under] the [Settlement] Agreement." (Italics added.) Thompson and Pompa reasonably sought this additional security to allay concerns their former attorney would compound their injuries by failing to make settlement payments. However, Thompson and Pompa were free to waive a security requirement intended solely for their benefit. (See *Wind Dancer Production Group v. Walt Disney Pictures* (2017) 10 Cal.App.5th 56, 78 [contractual terms may be waived by the party for whose benefit they are made].) The signing of a promissory note and deed of trust by Casas's wife was not an "essential condition" of the Settlement

Agreement (a term never employed until Casas attempted to escape his payment obligations).

2. *Casas's Obligation to Pay the Agreed Upon $250,000 Was Independent of His Obligation to Provide Additional Security*

Casas argues that the statute of frauds prevented him from encumbering community property without his wife's written consent. True. However, this did not serve to eliminate Casas's obligation to pay the agreed upon settlement. The security provided for an obligation is independent of the obligation itself. Plaintiffs' decision to abandon the security did not absolve Casas of his obligation to pay the $250,000.

We are not persuaded by Casas's self-serving attempt to use the parties' post-mediation correspondence to show the Stipulated Settlement was not binding.[8] Casas's own post-mediation conduct

---

[8] Casas also points to plaintiffs' decision not to file a notice of settlement under California Rules of Court, rule 3.1385, to indicate the Stipulated Settlement was not binding. But one need not file a notice of settlement to enforce a valid settlement agreement: "When a dispute arises on whether a binding settlement of a pending action has been reached, the party asserting the settlement has several options. If applicable, the proponent may use the summary procedures of a motion to enforce settlement under . . . section 664.6. . . . When the party asserting settlement prevails under section 664.6, . . . the Legislature has specifically authorized the trial court to enter judgment in accordance with the agreement. . . . [¶] In contrast, the Judicial Council formulated California Rules of Court, rule 3.1385 as a case management tool for delay reduction, designed specifically to 'assist courts in identifying inactive cases from the active cases that may require judicial

21

shows he understood he was bound by the Stipulated Settlement.  (See *Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 264 [""'conduct of the parties after execution of the contract and before any controversy has arisen as to its effect affords the most reliable evidence of the parties' intentions'"'"].)  Two days after the mediation, Casas began taking steps to satisfy his obligation under the Stipulated Settlement to dismiss his own litigation regarding the Gomez estate.  Casas offers no explanation why he would take such action if he doubted the existence of a binding agreement.  Moreover, although Casas relies on his request for an extension to respond to the complaint to show otherwise, his extension request was made four weeks after the mediation, and after Casas told Elliott he had no intention to sign the final settlement documents.

3. *Casas Defaulted on His Obligations Under the Settlement Agreement*

Casas maintains the trial court erred in entering the stipulated judgment because he did not default on his obligation under the Stipulated Settlement to pay the first installments of the $250,000, he owed.  Not so.

---

attention.' [Citation.]  Although effective as a case management tool, rule 3.1385 is not intended as a means to enforce settlements." (*Irvine v. Regents of University of California* (2007) 149 Cal.App.4th 994, 1000–1001, fn. omitted.)

That Settlement required Casas to "execute a stipulated judgment in the amount of $433,275 which judgment [to] be filed [if] [Casas] default[ed] on the payment terms of [the Stipulated Settlement]." The Stipulated Settlement was set up to enable Casas to pay the majority of the $250,000 in monthly installments. Under that agreement his obligation to begin making payments arose no later than May 31, 2018. Only Casas's initial $25,000 payment was linked to the parties' concurrent execution of formal post-mediation settlement documents. The Stipulated Settlement contains no condition precedent to Casas's obligation to make a $55,000 payment by May 31, 2018 or to begin making monthly $6,000 payments by July 1, 2018, until the entire $250,000 was satisfied. Thus, even if Casas's duty to make the initial $25,000 payment was linked to the parties' execution of additional documents, it did not excuse his obligation to make any other scheduled payment. Casas defaulted on the parties' agreement by failing to make (at least) the $55,000 payment on May 31, 2018, and triggered plaintiffs' ability to move to seek entry of the stipulated judgment under section 664.6.[9]

---

[9] Casas has never argued the stipulated judgment constitutes an unlawful liquidated damages award. Indeed, he concedes it is enforceable in the event of his default. Casas made no attempt to contradict Elliott's assertion that the amount of the Stipulated Judgment represented the actual damages plaintiffs suffered due to Casas's malpractice.

23

II. *The Trial Court Properly Denied Casas's Motion to Vacate Judgment*

A. *Once an Appeal Has Been Perfected, the Trial Court May Grant a Motion to Vacate Only as to a Facially Void Judgment*

Casas filed an appeal from the August 2018 judgment. Once an appeal is perfected, further trial court proceedings are automatically stayed as to matters embraced in or affected by a judgment appealed from. (§ 916.) This automatic stay is intended "'to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. [It] prevents the trial court from rendering an appeal futile by altering the appealed judgment . . . by conducting other proceedings that may affect it.'" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) A matter is "embraced in" or "affected by" an appealed judgment if the purpose of the appeal would be frustrated by further trial court proceedings on that matter. As to such matters, the trial court's power to enforce, vacate or modify an appealed judgment is suspended while the appeal is pending. (*Id.* at pp. 189–190.)

A limited exception to this rule exists if the judgment or order appealed from is void on its face, i.e., the defect appears on the face of the judgment or otherwise from the record itself. (*Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 854 (*Lovret*) ["'An appeal will not prevent the court from at any time lopping off what has been termed a dead limb on the judicial tree—a void order'"]; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 ["'A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment-roll'"]; *Trackman v. Kenney* (2010) 187 Cal.App.4th 175,

181 [the inquiry "does not hinge on evidence: A void judgment's invalidity appears on the *face of the record*"].) We independently review the legal question of whether a judgment is void on its face. (*Calvert v. Al Binali* (2018) 29 Cal.App.5th 954, 961.)[10]

B. *The Judgment Is Not Void on Its Face and the Trial Court Properly Concluded It Lacked Jurisdiction to Vacate It*

Casas contends no further record is necessary here because the invalidity of the judgment is apparent from an inspection of the judgment roll or record without consideration of extrinsic evidence. We disagree.

An order or judgment is considered void on its face "only when the invalidity is apparent from an inspection of the judgment roll or court record without consideration of extrinsic evidence." (*Pittman v. Beck Park Apartments Ltd.* (2018) 20 Cal.App.5th 1009, 1021.) The judgment

---

[10] Again, Casas is not assisted by the authorities on which he relies to avoid the rule of vacatur, as each of those cases involved a judgment void on its face. (See *Lovret, supra,* 22 Cal.App.3d at p. 854 [affirming trial court decision to vacate order being appealed because it is "settled law" that an "order which is void on its face . . . may be set aside on motion at any time after its entry by the court which rendered the judgment or made the order"]; *People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467 [judgment or order void on its face, which requires only an inspection of the judgment roll or record to demonstrate its invalidity, is subject to motion to set aside]; *Macmillan Petroleum Corp. v. Griffin* (1950) 99 Cal.App.2d 523, 529 [where record showed that successor company lacked the capacity to sue at the time the order appealed from was made, the order could be vacated as void].)

against Casas is not void on its face. The record shows the court had authority to enter it under section 664.6, pursuant to the express terms of the Stipulated Agreement signed by all litigants which provided for entry of judgment in the event of Casas's default. Casas defaulted when he failed to make the May 31, 2018 payment, affirmatively declared his refusal to make any payment, and failed to cure the default despite being given an opportunity to do so. The terms of the parties' settlement were sufficiently definite to enable the court to determine whether there was a breach. (See *Weddington, supra*, 60 Cal.App.4th at pp. 810–812.)

Casas acknowledges the trial court had jurisdiction to enter judgment. He argues, however, that the court lacked jurisdiction here to enter judgment under section 664.6 because "the parties never agreed to submit to the court's jurisdiction to enter the judgment on stipulation." The record reflects otherwise. The Stipulated Settlement, signed by all litigants, explicitly states it is "intended by the parties to be binding and enforceable . . . by motion pursuant to [section] 664.6." We have rejected Casas's claims there was no binding settlement because Mrs. Casas did not sign the promissory note or deed of trust, and she was a necessary party to the settlement. Plaintiffs sued Casas, not his wife. Only Casas's signature was necessary to create a binding agreement. (See § 664.6 [requiring signatures of parties to the action for a binding settlement]; see also *Anthony Macaroni, supra*, 5 Cal.App.2d at p. 590.)

26

Casas points to the unremarkable fact that the settlement documents sent to him after the mediation contain a signature line for his wife, and state that "part of the consideration" to plaintiffs was her agreement to sign the promissory note and deed of trust. At the mediator's direction, plaintiffs' counsel drafted and forwarded to Casas formal settlement documents a week after the parties agreed to settle. Those documents were sent to Casas two weeks before he announced his intention to renege because his wife refused to cooperate. Casas ignores the fact that, after he informed plaintiffs' counsel his wife would not sign a promissory note or deed of trust, plaintiffs chose to forego that security and Elliott sent new documents removing both the security and signature lines for Casas's spouse.

In sum, there is no merit to Casas's assertion that the judgment was void on its face. His wife was not a party to this action and her consent was unnecessary to give effect to the Stipulated Settlement, and Casas expressed his intent to default. There is no support for Casas's claim that plaintiffs' alleged "nonperformance" (by choosing to forgo the security and sending revised documents) discharged his obligations under the settlement agreement. The judgment was not void. As a result, the trial court lacked jurisdiction to vacate it, and Casas's motion to vacate was properly denied.

//

//

27

## DISPOSITION

The judgment is affirmed.  Respondents shall recover costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.